**FIRST BANK OF OAK PARK, Plaintiff-Appellant,**

v.

**AVENUE BANK AND TRUST COMPANY OF OAK PARK and Federal Deposit Insurance Corporation, Defendants-Appellees.**

No. 78–2544.

United States Court of Appeals, Seventh Circuit.

Argued May 23, 1979.

Decided Sept. 12, 1979.

Robert J. Peters, Chicago, Ill., for plaintiff-appellant.

P. Jane Rutherford, Chicago, Ill., for defendants-appellees.

Before TONE, Circuit Judge, KUNZIG,* Judge, and BAUER, Circuit Judge.

KUNZIG, Judge.

This appeal is the result of a suit arising out of the efforts by two competing banks to increase business through expanded banking facilities. Plaintiff-appellant First Bank of Oak Park contends that in approving an application for an additional banking facility for a rival bank, the Regional Director of the Federal Deposit Insurance Corporation (FDIC) [a defendant-appellee] exceeded the statutory and regulatory authority given him. The rival bank, defendant-appellee Avenue Bank and Trust Company, answers that for the limited type of banking operation it sought to add—an "adjunct" facility rather than a full-service "branch"—the Regional Director did indeed have the requisite regulatory authority delegated to him by the FDIC Board of Directors. We hold that the Regional Director had the necessary authority to approve defendant's application.

Both banks involved here are state banks insured under and subject to regulation by the FDIC. Both are located in Oak Park, Illinois. Plaintiff First Bank applied to the FDIC on January 4, 1977, for permission to build and operate a new banking facility at the southwest corner of Humphrey and North Avenues in Oak Park. Without objection, and using the same regulatory authority at issue in this instant case, the FDIC Regional Director approved the application on February 2 of that same year.

* Judge Robert L. Kunzig of the United States Court of Claims is sitting by designation.

On January 21, 1977—while the First Bank application was pending—defendant-appellee Avenue Bank applied for FDIC approval for a banking facility on North Avenue between Humphrey Avenue and Austin Boulevard. The site was to be immediately across a small side street from the proposed First Bank site. On its application, Avenue Bank described the facility as a "walk-up/drive-up" facility, with the only business to be the receipt of deposits, the cashing of checks, drafts and money orders, the changing of money and the receipt of loan payments. All actual processing was to be done at the main bank. The new facility itself was to have no deposits or income.

On May 6, 1977, after appropriate hearing, the FDIC Regional Director issued an order approving the Avenue Bank application. First Bank subsequently filed suit in the Northern District Court of Illinois, January 12, 1978.

District Judge Bernard Decker in a Memorandum Opinion and Order entered October 27, 1978, dismissed the action. On appeal, First Bank presses only one of its original arguments, that the Regional Director did not have the authority to grant Avenue's application. All other arguments have been abandoned.

We concur with Judge Decker.

Before examining the parties' arguments, a look at the applicable statutory and regulatory language is in order. Our starting point is the Federal Deposit Insurance Act, 12 U.S.C. § 1811 *et seq.* (1976). The Act provides that state banks which are not members of the Federal Reserve System need FDIC approval for all branch operations.[1] 12 U.S.C. § 1828(d) (1976). The Act then defines the word "branch" as follows:

"The term 'branch' includes any branch bank, branch office, branch agency, additional office, or any branch place of business located in any State of the United States or any Territory of the United States, Puerto Rico, Guam, American Sa-moa, or the Virgin Islands at which deposits are received or checks paid or money lent." 12 U.S.C. § 1813(*o*) (1976).

All parties agree that this definition of a branch is broad, in effect requiring virtually every new banking outlet to receive FDIC sanction. To facilitate granting such approval, the FDIC has set up a regulatory and operating framework within which limited grants of authority were delegated to FDIC Regional Directors across the country. Two of these regulatory provisions are the focus of this dispute, because the meaning given to them determines whether the regional director here had the authority he needed to approve Avenue's application.

The relevant provisions of the two regulations are as follows:

. . . [T]he Board of Directors of the Federal Deposit Insurance Corporation has delegated to . . . the Regional Director of the Region in which the applicant bank is located, the authority on behalf of the Board of Directors to act on the following applications and requests from any insured State nonmember bank:

(1) Application for the prior written consent of the Corporation to establish and operate any new teller's window, drive-in facility, or any like office, as an adjunct to a main office or a branch office (including offices not considered branches under State law), or to move its main office or any branch from one location to another; . . .

(7) Applications for the prior written consent of the Corporation to establish and operate any new branch; Provided, however, That this authority shall extend to the approval but not to the denial of such applications. 12 C.F.R. § 303.11(a) (1978).

First Bank has seized upon the language of subsection (7) (somewhat inartfully drawn) to support its argument that the Regional Director exceeded his authority. Since the regulations themselves do not of-

---

1. "No State nonmember insured bank (except a District bank) shall establish and operate any new branch unless it shall have the prior writ- ten consent of the Corporation . . ." 12 U.S.C. § 1828(d) (1976).

fer a definition of "branch" other than the definition found in the Federal Deposit Insurance Act, First Bank contends that the same definition applies with regard to all regulations promulgated under the Act. Using that definition, First Bank argues that Avenue's planned walk-up/drive-up facility was a branch within subsection (7) because it was a facility "[where] deposits are received or checks paid or money lent." 12 U.S.C. § 1813(*o*) (1976). This contention is significant because § 303.12(c) of the regulations provides that the Regional Director may not act on an application for an office of the kind described in subsection (7) of the applicant's adjusted capital and reserves constitute less than 7.5 percent of its adjusted gross assets. Since Avenue's adjusted capital to asset ratio was less than 7.5 percent, First Bank argues the Regional Director could not act.

Avenue's answer to this argument is that subsection (1) and not subsection (7) is the applicable regulation. Avenue contends that its planned facility fits easily within the description in subsection (1) of "any new teller's window, drive-in facility, or any like office . . ." While conceding that the planned new facility is a branch under the overall control of the Act, Avenue argues that a branch for purposes of the overall Act is not necessarily the same as a branch for purposes of the regulations here at issue.

We agree. As we have stated *supra,* the overall statutory definition of "branch" banks is so general as to encompass virtually every kind of new banking office. If we simplistically apply that statutory definition when construing the regulations, all new banking facilities would be "branches" and all would then have to be approved by the terms of subsection (7). To do so, however, would render subsection (1) meaningless, and we hardly think that is the intent of those who wrote the regulations.

We believe that the regulations envision two classes of banking facility, each requiring a different level of approval by the FDIC. Avenue Bank has clearly explained this dichotomy to the court. One category is described in subsection (7). Unfortunately, the authors of this regulation used the term "branch" to define the category. It consists of those more substantial banking facilities with economic lives of their own. Facilities of this kind require more scrutiny before they should be approved. Accordingly, the Regional Director is delegated by subsection (7) only limited authority to act on such applications, and then only after satisfying nine different criteria outlined in another regulatory section, including adjusted capital to asset ratios. The mere drive-up/walk-up facility planned by Avenue Bank clearly does not reach the level of facility contemplated by the terms and intent behind subsection (7).

The second category is the "adjunct" facility, the kind described by subsection (1). These are less substantial than autonomous, full-service facilities. Under subsection (1), the Regional Director has broad authority to act on applications to establish these facilities, since these less substantial operations require less attention by the full FDIC Board of Directors. Avenue's walk-up/drive-up facility is one of these. It has no economic status of its own. *All checks and monies received were physically transferred back to the main bank for processing.* Avenue's facility was plainly the type envisioned by the authors of subsection (1).

■ In addition, simple rules of construction also persuade us to accept Avenue's argument. "It is a cardinal principle of statutory construction that the more specific controls over the more general." *Central Commercial Co. v. Commissioner,* 337 F.2d 387, 389 (7th Cir. 1964). The more detailed definition of the adjunct facility given in subsection (1) more specifically described the facility at issue here, and that subsection gave the Regional Director all the authority he needed.

■ It is also important to note here that the FDIC itself has operated under subsection (1) to approve hundreds of facilities like Avenue Bank's new office. Indeed, plaintiff First Bank's facility was approved by the Regional Director in the same fashion. The responsible agency's interpreta-

tion of its own rules is entitled to great weight. *Udall v. Tallman,* 380 U.S. 1, 85 S.Ct. 792, 13 L.Ed.2d 616 (1964). As Mr. Chief Justice Warren stated for the *Udall* court:

> When faced with a problem of statutory construction, this Court shows great deference to the interpretation given the statute by the officers or agency charged with its administration . . . When the construction of an administrative regulation rather than a statute is in issue, deference is even more clearly in order. *Udall, supra* at 16–17, 85 S.Ct. at 801.

 When construing administrative regulations as we are asked to do here today, "[t]he ultimate criterion is the administrative interpretation, which becomes of controlling weight unless it is plainly erroneous or inconsistent with the regulation." *Bowles v. Seminole Rock Co.,* 325 U.S. 410, 414, 65 S.Ct. 1215, 1217, 89 L.Ed. 1700 (1945). We think it is wise in the instant case to give the FDIC's interpretation of its regulations controlling weight and accord the FDIC the deference it deserves.

Accordingly, in keeping with the regulatory intent and rules of statutory construction, and with due deference to the FDIC's previous interpretations of its own rules, the judgment of the district court is affirmed.[2]

AFFIRMED.

---

2. Since we have disposed of First Bank's appeal on the merits, we do not pass on whether its cause also could have been denied because of laches, an issue raised by Avenue Bank both in its brief and at oral argument.