657 F.2d 717
 Ruby Walls FOREMAN, as Administratrix of the Estate of Allen
Frank Walls,
deceased, Plaintiff-Appellee, Ruby Walls Foreman and Terry
Lee Walls, as Guardians of the person and estate
of Charity Annette Walls, Intervenors-Appellees,
v.
The PRUDENTIAL INSURANCE COMPANY and The United States of
America, Defendants-Appellants.
James M. MOORE and Betty Watson Moore, Plaintiffs-Appellees,
v.
The PRUDENTIAL INSURANCE COMPANY and the United States of
America, Defendants-Appellants.
 Nos. 80-7080, 80-9067.
 United States Court of Appeals,
Fifth Circuit.
 
 Unit B
 Sept. 28, 1981.
 Spain, Gillon, Riley, Tate & Etheredge, Ralph B. Tate, J. Stuart Wallace, Birmingham, Ala., for Prudential Ins. Co. in No. 80-7080.
 
 
 1
 Erwin, Epting, Gibson, McLeod & Blasingame, Eugene A. Epting, M. Steven Heath, Athens, Ga., for Prudential Ins. Co. in No. 80-9069.
 
 
 2
 Kenneth E. Vines, Asst. U. S. Atty., Montgomery, Ala., Margaret E. Clark, William Kanter, Sandra Wien Simon, Civ. Div., Dept. of Justice, Washington, D. C., for the U. S.
 
 
 3
 Ernest C. Hornsby, Steven F. Schmitt, Tallassee, Ala., for plaintiff-appellee and intervenors-appellees in No. 80-7080.
 
 
 4
 James W. Smith, Athens, Ga., for plaintiffs-appellees in No. 80-9067.
 
 
 5
 Appeals from the United States District Court for the Middle District of Alabama.
 
 
 6
 Appeals from the United States District Court for the Middle District of Georgia.
 
 
 7
 Before MORGAN, RONEY and KRAVITCH, Circuit Judges.
 
 RONEY, Circuit Judge:
 
 8
 These two cases raise the identical question: are first time enlistees in the Army National Guard, who die before commencing basic training, covered by Servicemen's Group Life Insurance. Holding that SGLI coverage comes into effect upon enlistment and assignment to a Guard unit which meets the statutory requirements, we affirm the judgments of the district courts, which both upheld insurance coverage.
 
 
 9
 In each case, the material facts are undisputed. In August 1977, the decedents, Allan Frank Walls and Danny Moore, enlisted in the Alabama and Georgia National Guards, respectively, and were immediately assigned to Guard units. Both indicated on their enlistment forms they accepted SGLI coverage in the amount of $20,000. Neither had previous military experience.
 
 
 10
 Before they undertook any training or had been ordered to report for active duty training, and while still in a nonpay status, Walls and Moore died in separate incidents. Their beneficiaries filed claims for the SGLI proceeds. The Veterans Administration, which supervises the insurance program, contended SGLI coverage could not begin until the commencement of active duty training, and therefore ruled that neither Walls nor Moore was covered at the time of death. The beneficiaries (hereinafter "plaintiffs") then filed these actions for the proceeds against the United States and The Prudential Insurance Company, the primary insurer under the SGLI Program (hereinafter "defendants").
 
 
 11
 In each case, summary judgment was granted in favor of plaintiffs. Both district courts held that SGLI coverage commenced upon enlistment and assignment to a Guard unit. From these rulings defendants appeal.
 
 Servicemen's Group Life Insurance
 
 12
 The Servicemen's Group Life Insurance Program was enacted by Congress to provide low-cost life insurance for servicemen. See 1965 U.S.Code Cong. & Adm.News, 3232, 3233. See generally, Shannon v. United States, 417 F.2d 256 (5th Cir. 1969). The Program is supervised by the Veterans Administration, which obtained a group life insurance policy from The Prudential Insurance Company to provide SGLI benefits. Coverage is automatically provided for eligible servicemen unless waived, see 38 U.S.C.A. §§ 767(a), 768(a), and premiums are generally collected through military payroll deductions, see 38 U.S.C.A. § 769.[1] The Veterans Administration has enacted regulations to implement the SGLI Program, which are codified at 38 C.F.R. § 9.1 et seq. (1980).
 
 
 13
 As originally enacted, the statute provided SGLI coverage only for servicemen in the regular Armed Forces. In 1970, Congress extended coverage to members of the "Ready Reserve," but only while the Reservists were participating in active or inactive duty training, or traveling to and from these training sessions.[2] The Ready Reserve includes the state branches of the Army National Guard, in which Walls and Moore had enlisted. See 10 U.S.C.A. § 269(b). The Program was again amended in 1974 to provide full-time coverage for Ready Reserve members, so that coverage is now in effect for Reservists at all times while they are "members" and not merely during training periods. 38 U.S.C.A. § 768(a). See generally 1974 U.S.Code Cong. & Adm.News 3117.
 
 
 14
 The determination of whether Walls and Moore were covered under this SGLI Program at the time of their deaths focuses on two inquiries: (1) whether enlistees such as the decedents are "members" of the Ready Reserve within the terms of the statute; and (2) if they are members, whether the effective date of coverage is the date of enlistment and assignment to a unit or the date active duty commences.
 
 
 15
 A Ready Reserve "member" is defined in the statute as follows:
 
 
 16
 (5) The term "member" means
 
 
 17
 (B) a person who (1) volunteers for assignment to the Ready Reserve of a uniformed service and (2) is assigned to a unit or position in which he may be required to perform active duty, or active duty for training, and (3) each year will be scheduled to perform at least twelve periods of inactive duty training....
 
 
 18
 38 U.S.C.A. § 765(5)(B) (bracketed numbers supplied). SGLI coverage is provided only for "members" of the Ready Reserve who meet the qualifications set forth in the above section.[3] 38 U.S.C.A. § 767(a)(2).
 
 
 19
 It is undisputed that Walls and Moore satisfied the first two requirements of the definition, because each had volunteered for assignment to the Ready Reserve and had been assigned to units in which they would be required to perform active duty or active duty training.
 
 
 20
 As to the third requirement, defendants argue that at their deaths, neither Walls nor Moore was a person who "will be scheduled to perform ... inactive duty training." Their argument hinges on the Army regulations which provide that an enlistee will not be scheduled to perform inactive duty training until they had completed "active duty training," which is a twelve-week basic training period.
 
 
 21
 Even if decedents were Ready Reserve members, there is a question as to the effective date of SGLI coverage for such members. Section 767(a) of the statute is most applicable. It first sets forth the three classes of persons insured under the Program:
 
 
 22
 (1) any member of a uniformed service on active duty, active duty for training, or inactive duty training scheduled in advance by competent authority;
 
 
 23
 (2) any member of the Ready Reserve of a uniformed service who meets the qualifications set forth in section 765(5)(B) of this title; and
 
 
 24
 (3) any member assigned to, or who upon application would be eligible for assignment to, the Retired Reserve of a uniformed service who meets the qualifications set forth in section 765(5)(C) of this title.
 
 
 25
 38 U.S.C.A. § 767(a). The section then provides the following:
 
 
 26
 The insurance shall be effective (1) the first day of active duty or active duty for training, or the beginning of a period of inactive duty training scheduled in advance by competent authority, or (2) the first day a member of the Ready Reserve meets the qualifications set forth in section 765(5)(B) of this title, or (3) the first day a member of the Reserves, whether or not assigned to the Retired Reserve of a uniformed service, meets the qualifications of section 765(5)(C) of this title, or (4) the date certified by the Administrator to the Secretary concerned as the date Servicemen's Group Life Insurance under this subchapter for the class or group concerned takes effect, whichever is the later date.
 
 
 27
 Id. (bracketed numbers and emphasis supplied). Defendants contend that under this latter section, the effective date of coverage for Ready Reserve members is the first day of active duty training, because this is the "later date."
 
 
 28
 Defendants' interpretations of the statute cannot be accepted to deprive the enlistees here of insurance coverage. Of significance in this decision is the fact that for several years the Department of the Army provided to the contrary.
 
 
 29
 In August 1974, the Department of the Army issued a statement setting forth new guidelines to implement the 1974 amendments to the SGLI Program. The Department expressly provided in this statement that "nonprior service members who are not in a pay status while awaiting entry on initial ADT (active duty training)" were insured under the Program. Walls and Moore clearly fell within this category. The statement then offered such persons three options for paying premiums while in this nonpay status:
 
 
 30
 (a) Pay the premiums from their own resources to their unit's servicing Finance and Accounting Office while awaiting entry on IADT (payment on a cash collection voucher), or
 
 
 31
 (b) Authorize the lump sum deduction upon entry on IADT of all the monthly premiums due up to the month prior to such entry, or
 
 
 32
 (c) None of the above, with the understanding that in the event of death prior to entry on IADT the monthly premiums due up to the date of death will be deducted from the insurance proceeds.
 
 
 33
 There is nothing in the record to indicate the Army did not carry out this policy.
 
 
 34
 On December 1, 1977, the Department of the Army, acting through its Finance Accounting Center, revised its system for collecting premiums from Reservists who had not yet entered into a pay status. It set up accounts for such persons and debited them monthly for SGLI premiums. The accrued premiums were then deducted from the Reservists' first pay vouchers received upon the commencement of training and pay status. The premiums so collected were forwarded by the Army to the Veterans Administration which in turn remitted them to Prudential. Pursuant to this procedure, Walls' account was debited for the months of December 1977 and January 1978. Moore's account was not so debited because he died before the institution of this new collection system.
 
 
 35
 As early as 1974, then, the Army had made its position clear with respect to SGLI coverage for Reservists in the position of Walls and Moore. Apparently premiums have been collected since this time on the basis of the Army's position and remitted to the Veterans Administration and ultimately to Prudential. Nothing in the record indicates that any such premiums were ever returned. The Veterans Administration did not take a position contrary to that of the Army until March 3, 1978, when it advised the Army of its view that Reservists were not qualified for SGLI coverage prior to the commencement of active duty training. This was after both Walls and Moore had died.
 
 
 36
 Contending the actions and determinations of the Army in no way bind them, defendants first argue that only the Veterans Administration has statutory authorization to administer and implement the SGLI Program as well as to determine coverage. While the Veterans Administration has the primary supervisory role under the statute, however, the Army clearly shares responsibility for administration of the Program. The statute itself provides the Army shall collect the premiums, see 38 U.S.C.A. § 769, and the Administrator of the Veterans Administration at the time of the 1974 amendments indicated to Congress the Armed Forces would be delegated additional responsibilities:
 
 
 37
 In carrying out the bill's provision, the Veterans Administration, and the primary insurer, would have to rely upon the uniformed services to identify those individuals who qualify for full-time coverage, to remit the premium charges for members of the Ready Reserve, to notify the insurer and the member when the member is assigned to the Retired Reserve.
 
 
 38
 Letter from Donald E. Johnson, Administrator, to the Committee on Veterans' Affairs (May 16, 1973), reprinted in 1974 U.S.Code Cong. & Adm.News 3153 (emphasis supplied). Moreover, even if the Veterans Administration had the ultimate responsibility for determining coverage, its failure to countermand the position taken by the Army in 1974 suggests it did not dispute this position. Approximately four years elapsed before the Veterans Administration sought to advise the Army of a contrary view.
 
 
 39
 Defendants next argue the United States may not be estopped by the actions of its agencies. See, e. g., Federal Crop Insurance Corp. v. Merrill, 332 U.S. 380, 68 S.Ct. 1, 92 L.Ed. 10 (1947); Allison v. United States, 426 F.2d 1324 (6th Cir. 1970). This may well be true. The issue here, however, is not one of estoppel but rather of the interpretation given a statute by agencies charged with the responsibility to apply it. The actions of the Department of the Army and the Veterans Administration indicate their original view that the SGLI statute provides coverage for Reservists who, like Walls and Moore, had not yet begun active duty training. See, e. g., Quern v. Mandley, 436 U.S. 725, 738, 98 S.Ct. 2068, 2076, 56 L.Ed.2d 658 (1978); Fredericks v. Kreps, 578 F.2d 555, 561 (5th Cir. 1978) (deference given to interpretation of statute by agencies charged with its execution).
 
 
 40
 If the Department of the Army was clearly wrong in its interpretation of the statute, the principles against government estoppel and against the nonbinding effect of agency decisions might be persuasive. If the Department's interpretation was reasonable, however, justice requires that plaintiffs prevail. We think the statutes can be reasonably so construed.
 
 
 41
 With respect to the issue of membership, a reasonable construction of the "will be scheduled" requirement could place decedents in the class of members. The language of the clause is in the future tense. New members of the Guard units to which decedents were assigned "will be scheduled (each year) to perform at least twelve periods of inactive duty training." The fact the recent enlistees would not be scheduled for inactive duty training until the completion of active duty does not mean they are persons who will not be scheduled.
 
 
 42
 This third clause does not state that members must be "qualified to be scheduled" to perform inactive duty training, or otherwise provide that persons may not be deemed "members" until they have completed active duty training. In the absence of such language, it is reasonable to conclude that Congress intended the purpose of the clause was only to limit SGLI coverage to Reserve units and their members that would engage in a certain minimum level of periodic training. We therefore hold that Walls and Moore were properly held to be "members" of the Ready Reserve within the terms of section 765(5)(B) of the statute.
 
 
 43
 As to the date of coverage, a reasonable interpretation of the relevant provisions would make the insurance effective the first day a member of the Reserve meets the qualifications of section 765(5)(B). The first three effective date clauses correspond precisely to the three classes of servicemen previously specified in the section. The second effective date clause, not the first clause, is that which corresponds to the class of Ready Reservists, the second class specified. To apply the first clause to Ready Reservists, as defendants contend, would render the second clause meaningless, because the effective date provided in the first clause, the first day of active duty training, will always be later than that provided in the second clause, the first day an enlistee in the Ready Reserve becomes a "member." The principle is well established that it "is not to be presumed that Congress intended any part of a statute to be without reasonable meaning." Payne v. Panama Canal Co., 607 F.2d 155, 164 (5th Cir. 1979). See also General Motors Acceptance Corp. v. Whisnant, 387 F.2d 774, 775, 778 (5th Cir. 1968). To the extent the first clause, present in the 1970 version of the law, contains language which may be potentially applicable to Ready Reservists, it is superseded by the second clause's more specific language referring to Ready Reservists, which was added by Congress in the 1974 amendments. See, e. g., First Bank of Oak Park v. Avenue Bank & Trust Co., 605 F.2d 372, 375 (7th Cir. 1979) ("It is a cardinal principle of statutory construction that the more specific controls over the more general"); F. T. C. v. Manager, Retail Credit Co., 515 F.2d 988, 993 (D.C.Cir. 1975).
 
 
 44
 Moreover, the legislative history of the SGLI statute indicates the term, "whichever is the later date," was not intended to provide for the selection of the latest effective date among the first three clauses. Instead, it appears the term refers only to the fourth clause, the date certified by the Administrator as the effective date for the class concerned.[4] The original purpose of the fourth clause apparently was to provide the Administrator of the Veterans Administration with authority to establish the effective date of coverage for servicemen who were on active duty or active duty training at the time the SGLI statute became effective. Accordingly, for this group of servicemen, the Administrator established the effective date of coverage as the date when the statute itself went into effect, rather than the first day of active duty or active duty training.[5] There is no evidence the clause was intended to authorize the Administrator to otherwise establish an effective date contrary to that provided by the statute.
 
 
 45
 Even if the clause authorized the Administrator to certify the first day of active duty training as the effective date for Reservists, however, there is no evidence such certification was made. Defendants argue this certification date is set forth in the SGLI regulations promulgated by the Veterans Administration. Section 9.2(b) of the regulations provides:
 
 
 46
 The effective date of Servicemen's Group Life Insurance coverage for each member entering on active duty, active duty for training, or inactive duty training after May 24, 1974, is the first day of such duty unless the member has elected in writing not to be covered.
 
 
 47
 38 C.F.R. § 9.2(b) (1980). This language, carried over from the 1970 version of the regulations, tracks the effective date clause in the statute prior to 1974, when Ready Reservists were covered only during training periods. It does not appear to take into account the effective date clause referring to Ready Reserve members added by the 1974 amendments, which extended full-time coverage to Reservists. This regulation, then, does not appear to establish a "certified date" for Ready Reservists within the meaning of section 767(a).
 
 
 48
 In addition to section 767(a), section 768(a) bears on the question of the effective date of coverage. This section provides in part:
 
 
 49
 (a) Each policy purchased under this subchapter shall contain a provision ... to the effect that any insurance thereunder on any member of the uniformed services ... shall continue in effect while the member is on active duty, active duty for training, or inactive duty training scheduled in advance by competent authority during the period thereof, or while the member meets the qualifications set forth in section 765(5)(B) ....
 
 
 50
 38 U.S.C.A. § 768(a) (emphasis supplied). As noted earlier, a Reservist "meets the qualifications set forth in section 765(5)(B)" upon enlistment and assignment to a Guard unit. Thus, under section 768(a), coverage is effective when a Reservist meets the latter conditions.
 
 
 51
 We hold that in light of the terms of the SGLI statute and the history of its application by the Department of the Army and the Veterans Administration, SGLI coverage is effective for members of the Army National Guard upon enlistment and assignment to a Guard unit meeting the statutory requirements. The judgments finding Walls and Moore covered at the time of death are therefore affirmed.
 
 
 52
 The judgment in the Moore case, No. 80-9067, included an award of interest as well as a deduction of premiums due at the time of Moore's death. See 38 U.S.C.A. § 769(a)(4). The judgment in the Foreman case, No. 80-7080, did not take into account either an interest award, although plaintiffs in that case requested it, or a deduction of premiums. Accordingly, the Foreman case is remanded to the district court for determination of the amount of these modifications.
 
 
 53
 80-9067 AFFIRMED.
 
 
 54
 80-7080 AFFIRMED IN PART; REMANDED IN PART.
 
 
 
 [1]
 Section 769 provides that deductions shall be from "pay or otherwise." 38 U.S.C.A. §§ 769(a)(2), (3). It also provides that "(a)ny amount not deducted from the basic or other pay of a member insured ... shall be deducted from the proceeds of any insurance thereafter payable." Id. at § 769(a)(4)
 
 
 [2]
 These periods of training are defined in the statute as follows:
 (2) The term "active duty for training" means
 (A) full-time duty in the Armed Forces performed by Reserves for training purposes;
 (B) full-time duty for training purposes performed as a commissioned officer of the Reserve Corps of the Public Health Service;
 (C) full-time duty as a member, cadet, or midshipman of the Reserve Officers Training Corps while attending field training or practice cruises; and
 (D) in the case of members of the National Guard or Air National Guard of any State, full-time duty under sections 316, 502, 503, 504, or 505 of title 32, United States Code.
 (3) The term "inactive duty training" means
 (A) duty (other than full-time duty) prescribed or authorized for Reserves (including commissioned officers of the Reserve Corps of the Public Health Service) which duty is scheduled in advance by competent authority to begin at a specific time and place; and
 (B) in the case of a member of the National Guard or Air National Guard of any State, such term means duty (other than full-time duty) which is scheduled in advance by competent authority to begin at a specific time and place under sections 316, 502, 503, 504, or 505 of title 32, United States Code.
 (4) The terms "active duty for training" and "inactive duty training" do not include duty performed as a temporary member of the Coast Guard Reserve, and the term "inactive duty training" does not include (i) work or study performed in connection with correspondence courses, or (ii) attendance at an educational institution in an inactive status.
 38 U.S.C.A. §§ 765(2)-(4).
 
 
 [3]
 "Members" eligible for SGLI coverage also include:
 (A) a person on active duty, active duty for training, or inactive duty training in the uniformed services in a commissioned, warrant, or enlisted rank, or grade, or as a cadet or midshipman of the United States Military Academy, United States Naval Academy, United States Air Force Academy, or the United States Coast Guard Academy;
 ....
 (C) a person assigned to, or who upon application would be eligible for assignment to, the Retired Reserve of a uniformed service who has not received the first increment of retirement pay or has not yet reached sixty-one years of age and has completed at least twenty years of satisfactory service creditable for retirement purposes under chapter 67 of title 10; and
 (D) a member, cadet, or midshipman of the Reserve Officers Training Corps while attending field training or practice cruises.
 38 U.S.C.A. § 765(5).
 
 
 [4]
 Section 767(a), as originally enacted in 1965, provided in pertinent part:
 (a) Any policy of insurance purchased by the Administrator under section 766 of this title shall automatically insure any member of the uniformed services on active duty ... from the first day of such duty, or from the date certified by the Administrator to the Secretary concerned as the date Servicemen's Group Life Insurance under this subchapter takes effect, whichever date is the later date....
 
 
 [5]
 The present version of 38 C.F.R. § 9.2(a) provides:
 § 9.2 Effective date.
 (a) The effective date of Servicemen's Group Life Insurance coverage for each member then on active duty, active duty for training, or inactive duty training is May 24, 1974. The date is controlled by the local standard time of the member's then physical location.
 This version is substantially the same as earlier versions, except the effective date has been revised to reflect the effective dates of the 1970 and 1974 amendments.