**BANK OF the NORTH SHORE,**
**Plaintiff-Appellant,**

v.

**The FEDERAL DEPOSIT INSURANCE CORPORATION; Paul J. Fritts, Chicago Regional Director; and the Northbrook Trust and Savings Bank, an Illinois Banking Corporation,**

**and**

**C.T. Conover, Comptroller of the Currency of the United States; Paul E. James, Deputy Regional Administrator; and First National Bank of Northbrook, a National Banking Association, Defendants-Appellees.**

**Nos. 83–2111, 83–2121 and 83–2179.**

United States Court of Appeals,
Seventh Circuit.

Argued March 28, 1984.

Decided Sept. 5, 1984.

Michael T. Sawyier, Foss, Schuman & Drake, Cohen & Bullard, Chicago, Ill., for plaintiff-appellant.

Mary Anne Mason, Asst. U.S. Atty., Dan K. Webb, U.S. Atty., Chicago, Ill., for defendants-appellees.

Before WOOD, CUDAHY and POSNER, Circuit Judges.

HARLINGTON WOOD, Jr., Circuit Judge.

Bank of the North Shore appeals the dismissal of its actions attacking federal banking agency approvals of automated teller machines in a shopping mall near appellant's main banking premises. We affirm.

## I. Facts

The main facility of appellant Bank of the North Shore is located near the Northbrook Court Shopping Center in Northbrook, Illinois, a northern suburb of Chicago. The First National Bank of Northbrook and the Northbrook Trust and Savings Bank planned to install a group of automated teller machines (ATMs) within Northbrook Court's enclosed mall. First National's machine is in the "Cash Station" electronic funds transfer system; Northbrook Trust's machine is in the "Money Network" system. These machines perform conventional electronic funds transfers, and also accept commercial bulk deposits, which apparently is a novel feature.

First National, a national bank regulated by the Comptroller of the Currency, applied to the regional office of the Comptroller on December 7, 1982, for approval of its plan to establish an automated teller machine in Northbrook Court. For purposes of 12 U.S.C. § 36(c) (1982), automated teller machines—called customer-bank communication terminals (CBCTs)—are treated as bank branches. *Independent Bankers Association of America v. Smith*, 534 F.2d 921, 931 (D.C.Cir.), *cert. denied*, 429 U.S. 862, 97 S.Ct. 166, 50 L.Ed.2d 141 (1976). A national bank may establish a new branch if its state counterpart could establish a similar facility under state law, 12 U.S.C. § 36(c), and the Comptroller is not bound by state agency or state court interpretations of state statutes. *Marshall & Ilsley Corp. v. Heimann*, 652 F.2d 685, 697 n. 20 (7th Cir.1981), *cert. denied*, 455 U.S. 981, 102 S.Ct. 1489, 71 L.Ed.2d 691 (1982). When First National published notice of its application, appellant challenged the plan on one state law ground[1] and requested a hearing. The Comptroller denied the hearing request but extended the comment period to allow submission of written evidence on the state law issue. The Comptroller determined from the written submissions that the re-

---

1. Appellant objected that the CBCT would violate the Illinois "600-foot rule" of home office protection, Ill.Rev.Stat. ch. 17, § 311(16)(j) (1983), by being within 600 feet of appellant's main facility.

mote facility complied with state law and, on January 17, 1983, approved the facility contingent on it being established within nine months. Nine days later, appellant requested a hearing on six other issues,[2] which the Comptroller denied. Appellant then sued the Comptroller and First National (the Comptroller case), asking the federal court to invalidate the Comptroller's approval for failure to comply with Illinois law, and to hold that the approval procedure violated procedural due process.

Northbrook Trust is a state-chartered bank, not a member of the Federal Reserve System, that is insured by the Federal Deposit Insurance Corporation (FDIC). As such, it must have the approval of both the state banking agency, here the Illinois Commissioner of Banks and Trust Companies, and the FDIC to establish an automated teller machine. *See* 12 U.S.C. § 1828(d)(1) (1982); 12 C.F.R. § 303.12(a)(2) (1983). Automated teller machines are expressly permitted under Illinois law, *see* Ill.Rev.Stat. ch. 17, § 311(16)(b) (1983), and, at the time relevant here, could be approved as a remote service facility under the simplified FDIC procedures of 12 C.F.R. § 303.14(1)(2)(i) (1983).[3] On December 2, 1982, Northbrook Trust submitted a letter of intent to the Chicago regional office of the FDIC and published notice of its plan to establish an automated teller

machine in Northbrook Court. Appellant earlier had registered a protest with the FDIC concerning Northbrook Trust's anticipated application; upon Northbrook Trust's publication of notice, appellant reiterated this and raised four other objections, all based on state law.[4] Appellant sought a formal hearing before the FDIC as provided under 12 C.F.R. § 303.14(d)(1) (1983). The FDIC refused to hold a hearing on state law issues because it defers to state agency determinations on state law, but it scheduled informal proceedings for appellant to raise any other concerns. Appellant declined to attend the informal proceedings. After the Illinois Commissioner approved Northbrook Trust's remote facility on January 19, 1983, the FDIC notified Northbrook Trust on January 28, 1983, that it had no objections to the plan. Appellant then sued the FDIC and Northbrook Trust in federal court (the FDIC case), claiming that FDIC approval was void for failure to comply with statutory standards and because the simplified application and notice procedure violated procedural due process. Appellant also sought abstention in both the Comptroller and FDIC cases, or a stay of FDIC approval, pending a decision of the state court in appellant's parallel state law challenge to the validity of state approval of the remote service facility.[5]

2.  The additional issues were whether (1) public convenience or need would be served by a facility at this location; (2) other banks would have reasonable and non-discriminatory access to the new facility; (3) the relevant facts concerning the application were before the Comptroller; (4) the application was premature because First National had not yet entered a lease for the space or obtained the necessary zoning permit; (5) the joint location of two machines owned by different banks violated an Illinois law requiring a maximum 100-foot radius around a group of machines of a single bank, *see* Ill.Rev.Stat. ch. 17, § 311(16)(a) (1983); and (6) the joint location of commercial bulk depositories owned by different banks also violated Illinois law, presumably the 100-foot radius requirement.

3.  Under the regulations in effect when this application was filed, Northbrook Trust, having received FDIC approval of its first remote service facility in July 1981, could add another site without a formal application by advising the FDIC in writing and by providing notice. *See*

12 C.F.R. § 303.14(*l*)(2)(i) (1983). In mid-1983, this subsection of the regulations was deleted. *See* 48 Fed.Reg. 28,078 (June 20, 1983). Applications for all remote service facilities now fall under the procedures of 12 C.F.R. § 303.-14(*l*)(2) (1984).

4.  Appellant's objections were that (1) the facility violated the Illinois 600-foot rule; (2) Northbrook Trust had not yet signed a lease for the mall space; (3) Northbrook Trust at that time had been denied a special zoning permit to establish its remote facility; (4) Northbrook Trust's ATM would violate the 100-foot radius requirement of Illinois law; and (5) the commercial bulk depository unit would be activated by a debit card in violation of Illinois law.

5.  The state court action against the Illinois Commissioner and Northbrook Trust claimed that (1) the Commissioner improperly denied appellant's hearing request; (2) approval of a group of ATMs established by different banks violated

Upon consolidation of the two lawsuits, the district court denied appellant's motion for a preliminary injunction on March 18, 1983. The court denied appellant's motion for summary judgment and granted appellees' cross-motions for summary judgment in both cases on April 18, 1983. The district court upheld the agency actions as not arbitrary, capricious, or an abuse of discretion, held that appellant had waived issues not timely raised, and found no procedural due process violation. Refusing to abstain in either case, the court found that abstention was not applicable in the Comptroller case and that the FDIC had complied with state law as presented to it. The district court noted that if the state court subsequently invalidated state approval of Northbrook Trust's application, appellant could bring another federal suit to void FDIC approval. One day after the district court dismissed the federal action, appellant sought and was granted voluntary dismissal of its state court action, ostensibly

due to its belief that res judicata barred the state court suit from proceeding further.

In this court, appellant argues that (1) the simplified approval procedures of the Comptroller and the FDIC violate procedural due process; (2) the two agencies failed to comply with their respective statutory requirements; and (3) the district court erred by declining to abstain on the state law issues presented in the FDIC case.

## II. Procedural Due Process

Appellant claims that the simplified approval procedures promulgated by the Comptroller [6] and the FDIC [7] violate procedural due process as unreasonable, unfair, and an improper delegation of congressional authority. Appellant argues that the "automatic approval" procedures were intended to prevent opponents from raising statutory objections, to allow the agencies to disregard statutory standards unless specifically raised, and to preclude any meaningful review of applications for remote service facilities.[8]

the 100-foot radius rule; (3) failure to require submission of a written sharing agreement violated Ill.Rev.Stat. ch. 17, § 311(16)(g) (1983); and (4) the 600-foot rule for home office protection should be measured from appellant's premises to the nearest point of the mall.

6. Under regulations promulgated by the Comptroller, a bank seeking approval of a new CBCT must submit an application to the regional office of the Comptroller and, within five days, must publish notice in a local newspaper of general circulation. 12 C.F.R. § 5.31(g) (1984). That notice must include a statement that written comments "must be submitted by interested persons within 10 days after the newspaper publication date." *Id.* at § 5.31(g)(2). Within ten days after publication, interested persons "may submit" written comments to the regional administrator. *Id.* at § 5.31(h). Written requests for a hearing "will be considered only by direction of the Comptroller." *Id.* On or before the tenth day after the end of the comment period, a decision will be made either to approve the application or to consider it further. *Id.* at § 5.31(i). In the event of a disapproval, the applicant will be notified of the basis for the decision. *Id.*

7. Under the regulations in effect in 1983, a bank seeking to establish an additional remote service facility must so advise the regional office in writing and must provide public notice. 12 C.F.R. § 303.14(*l*)(2)(i) (1983). Within fifteen days of the regional director's receipt of the

bank's statement of intent, the bank must publish notice in newspapers serving the communities of the home office and the branch. *Id.* at § 303.14(b)(1)(ii). The published notice must include a statement describing the right to comment upon the application. *Id.* at §§ 303.-14(b)(3); 303.14(d)(2). A formal protest and hearing request must be filed within fifteen days after final publication of notice; a request for an oral presentation must include a statement of interest and list the matters of concern. *Id.* at § 303.14(d). The FDIC "may, *at its discretion,* decide to hold a hearing," or may deny a hearing or hold informal proceedings instead. *Id.* at § 303.14(d)(3) (emphasis added). The final disposition of any application need not be determined exclusively from the information contained in the public file. *Id.* at § 303.14(g). The applicant and any other person who so requests shall be notified of the final disposition and provided with a statement of reasons for the disposition. *Id.* The additional facility is approved if the FDIC does not inform the applicant bank otherwise within thirty days of final publication of notice. *Id.* at § 303.14(*l*)(2)(i).

8. Appellant also argues that the "automatic approval" process is a "transparent attempt" by the Comptroller to exclude CBCTs from the statutory category of bank branches, 12 U.S.C. § 36(f) (1982), so as to evade state prohibitions on branch banking, despite the invalidation of the Comptroller's earlier rule doing just that. *See Independent Bankers Association of America v.*

## A.  Comment Period and Waiver

██ Appellant claims that the limited comment period afforded under the Comptroller's regulations ("only ten days (following an obscure newspaper notice) ... without giving [interested parties] express warning of the possible consequences if that deadline were missed") unfairly prevents opponents from raising objections based on the Comptroller's statutory mandate.[9] We disagree.  Comment periods are prevalent in administrative agency actions, and the procedure used here is not out of the ordinary.  A limitation on the time period within which objections may be raised is required in fairness to the applicant and for the efficient operation of the agency.  We see no purpose in having a designated period for comment if it does not serve to limit the time within which one may raise objections.  Waiver need not be separately noticed; it is inherent in the notion of a limited comment period.

██ We recognize that the simplified nature of the application process at issue here may not always provide an opponent with detailed information about a competitor's proposal.  In this situation, however, appellant was sufficiently aware of the nature of the proposal to have a fair opportunity to raise all its state law objections before the Comptroller.[10] We affirm the district court's holding that appellant waived those issues it failed to raise during the comment period.[11]

## B.  Hearing

Appellant argues that some meaningful hearing rights are essential to protect against arbitrary administrative action. The statutes do not require a hearing, and the regulations give both the Comptroller and the FDIC discretion to deny a hearing request.[12] The courts have rejected challenges to actions of the Comptroller and FDIC based on their denials of requests for

*Smith,* 534 F.2d 921, 930 (D.C.Cir.), *cert. denied,* 429 U.S. 862, 97 S.Ct. 166, 50 L.Ed.2d 141 (1976).  Regardless of the abbreviated nature of the approval process, the statute requires the Comptroller to evaluate whether state law would permit a state bank to establish such a facility.  The Comptroller here did evaluate Illinois banking law and did determine that such a facility would be permitted under Illinois law.  No manipulation in dereliction of Illinois law or *the statutory mandate is apparent here.*

9.  Appellant also argues that the regulations are unfair because they do not allow the Comptroller to extend the comment period in individual cases.  The Comptroller responds that it does have such power, and used it in this case, as the district court found.  The Comptroller extended the comment period to allow appellant time to make written submissions on the objection it had raised during the initial comment period. Appellant did not raise its additional objections until after the Comptroller had approved the application, well after the extended period for submissions had passed.  The Comptroller claims that it would have entertained additional objections had they been raised during the extended period.  His power to do so, although not explicit, may be implied despite the inapplicability to the CBCT approval process of a provision granting a post-denial fourteen-day comment period.  *See* 12 C.F.R. § 5.10(c); *id.* at § 5.31(e) (section 5.10 not applicable to CBCT approval process).

10.  Appellant claims that a misunderstanding with the Comptroller's office led it to believe

that its additional objections could be raised after the comment period.  We see no reason to disturb the district court's rejection of this claim as a factual matter.

11.  Appellant strongly urges that the doctrine of exhaustion of administrative remedies should not be applied to its statutory objections under the *McKart v. United States,* 395 U.S. 185, 89 S.Ct. 1657, 23 L.Ed.2d 194 (1969), exception to that doctrine.  The very narrow *McKart* exception is not applicable in this case where appellant had raised one statutory objection before the agency and had the same opportunity to raise others, and where the exhaustion requirement will not work such an exceedingly harsh result as eliminating a valid defense to a criminal prosecution.

12.  Requests for a hearing before the Comptroller "will be considered only by direction of the Comptroller."  12 C.F.R. § 5.31(h) (1984); *see supra* note 6.  The FDIC "at its discretion" may hold a formal hearing, informal proceedings, or neither.  12 C.F.R. § 303.14(d)(3) (1983); *see supra* note 7.  Further, hearings before the FDIC "will not generally be afforded the participants if they have had the opportunity to participate in prior hearings before the appropriate State authority which covered essentially the same issues or if the Regional Director determines that less formal proceedings will be adequate."  12 C.F.R. § 303.14(e) (1983).

formal hearings. *See First Bank and Trust Co. v. Smith,* 509 F.2d 663, 665 (1st Cir.1975), *appeal after remand,* 545 F.2d 752 (1st Cir.1976), *cert. denied,* 430 U.S. 931, 97 S.Ct. 1551, 51 L.Ed.2d 775 (1977) (neither National Banking Act nor Administrative Procedure Act (APA) requires Comptroller to hold formal hearing on application to establish branch bank); *see also Camp v. Pitts,* 411 U.S. 138, 140–41, 93 S.Ct. 1241, 1243, 36 L.Ed.2d 106 (1973) (per curiam) (neither National Banking Act nor APA requires Comptroller to hold formal hearing on application to organize new bank); *Tollway Arlington National Bank v. Davis,* No. 74 C 511 (N.D.Ill. Nov. 1, 1974) (no violation of due process or FDIC regulations to decline to hold formal hearing on application to issue FDIC insurance to new bank). Here, each agency was faced with a request for a hearing on state law issues. The Comptroller, who may interpret as a matter of federal law incorporated state statutes, *Marshall & Ilsley Corp. v. Heimann,* 652 F.2d 685, 697 n. 20 (7th Cir.1981), *cert. denied,* 455 U.S. 981, 102 S.Ct. 1489, 71 L.Ed.2d 691 (1982); *First National Bank of Fairbanks v. Camp,* 465 F.2d 586, 595–96 (D.C.Cir.1972), *cert. denied,* 409 U.S. 1124, 93 S.Ct. 936, 34 L.Ed.2d 256 (1973), concluded that a decision on the alleged violation of the 600-foot rule would require only written submissions. The FDIC, which defers to state agency determinations of state law and may not approve an application until state approval is issued, 12 C.F.R. § 303.12(a)(2) (1983), offered to hold informal proceedings on any non-state law objections that appellant might have.

■ The opportunities to express its concerns provided appellant with meaningful hearing rights sufficient under the circumstances to protect its interests. Administrative law would become much too unwieldy if a formal hearing were required

each time a regulation merely provides for the possibility. We hold that the agencies acted within their discretion to deny formal hearings on appellant's objections, and that these regulations providing discretion to deny formal hearings even in an abbreviated review do not violate procedural due process.

### III. Compliance with Statutory Requirements

#### A. The Comptroller Case

■ Appellant argues that the Comptroller's approval of First National's application is invalid for failure to comply with Illinois law as required by federal statute. We review the Comptroller's decision to determine whether it was arbitrary, capricious, or an abuse of discretion. *See Camp v. Pitts,* 411 U.S. 138, 142, 93 S.Ct. 1241, 1244, 36 L.Ed.2d 106 (1973); *First Union Bank and Trust Co. v. Heimann,* 600 F.2d 91, 95 (7th Cir.), *cert. denied,* 444 U.S. 950, 100 S.Ct. 423, 62 L.Ed.2d 320 (1979); 5 U.S.C. § 706(2)(A) (1982). The statute provides that the Comptroller may approve a new branch if a counterpart state bank could establish a similar branch under state law.[13] In determining whether state law would permit a given branch, the Comptroller may interpret state statutes as a matter of federal law and thus may reject state agency or court interpretations of state statutes. *Marshall & Ilsley,* 652 F.2d at 697 n. 20; *First National Bank of Fairbanks,* 465 F.2d at 595–96.

■ On the one state law issue raised during the comment period, the Comptroller decided that the location of First National's CBCT would not violate the Illinois 600-foot rule. The Comptroller ruled that the 600 feet should be measured from appellant's premises to the precise location of the CBCT within the mall, rather than to the nearest point of the mall as appellant

---

**13.** The statutory provision concerning establishment and operation of a branch by a national bank provides in relevant part:

    (c) A national banking association may, with the approval of the Comptroller of the Currency, establish and operate new branches: (1)

Within the limits of the City, town or village in which said association is situated, if such establishment and operation are at the time expressly authorized to State banks by the law of the State in question; ....

12 U.S.C. § 36(c) (1982).

argued. This decision is in accord with an Illinois Attorney General interpretation of the 600-foot rule pertaining to a detached banking facility in a shopping mall, *see* 1976 Op. Att'y Gen. 301 (measuring between the home office and the area within the mall set aside specifically for the detached facility), and is otherwise a rational reading of Illinois law. The Comptroller's decision on the 600-foot rule[14] was not arbitrary and capricious.[15]

### B. The FDIC Case

We likewise review the FDIC's approval under the arbitrary and capricious standard of review. 5 U.S.C. § 706(2)(A) (1982); *see also First Bank of Oak Park v. Avenue Bank and Trust Co.*, 605 F.2d 372, 376 (7th Cir.1979). Unlike the Comptroller, the FDIC may not independently determine state law, and it may not approve an application without prior state agency approval. *See* 12 C.F.R. § 303.12(a)(2) (1983). The FDIC here did not act until the Illinois Commissioner had approved Northbrook Trust's application. The FDIC was under no obligation to investigate whether the Commissioner complied with state law, and in particular whether his "ministerial acceptance" of the application was adequate.

The relevant federal statute requires the FDIC to review an application for a remote service facility for compliance with the six factors cited in 12 U.S.C. § 1816 (1982).[16] Appellant claims that the FDIC failed to analyze these statutory factors, in particular "the convenience and needs of the community to be served." *Id.* Appellant first points to the paucity of information provided on the application as precluding review for compliance with the statutory factors. However, the simplified approval procedures used here applied only when the applicant bank previously had established a remote service facility under a full application process, as had Northbrook Trust. *See* 12 C.F.R. § 303.14(*l*)(2)(i) (1983); *supra* note 3. Review of the application for this subsequent remote facility, which as an automated teller machine would perform only a limited range of banking services and thus would not raise complex banking issues, should be able to be conducted in a cursory manner.

Appellant next argues that the denial of a special zoning permit, in effect at the time of FDIC approval, was evidence that the community's needs would not be served by this facility, and no other facts

---

**14.** The district court ruled that appellant's Illinois law arguments on the 600-foot rule and group ATMs were "entirely untenable." We note that the rulings on state law issues were not necessary to review these federal agency actions under the arbitrary and capricious standard, and would not be binding on either state or federal agencies or courts.

**15.** Appellant also argues that the Comptroller could not possibly have reviewed the application for conformity with Illinois law because First National did not submit a sharing agreement specifically concerning the commercial bulk depository. This type of issue perhaps would not be waived for failure to raise it during the comment period if, for example, an opponent previously was unaware of a commercial bulk depository feature that was not mentioned in an application. Assuming *arguendo* that this issue was not waived here, we hold that the Comptroller within his discretion could interpret Illinois law not to require submission of a separate bulk deposit sharing agreement. The Illinois Commissioner, for example, treats a commercial bulk depository as a permissible function of an ATM that need not be specifically

mentioned in a sharing agreement. *See* Letter of Legal Counsel to the Illinois Commissioner of Banks and Trust Companies, to First National, February 4, 1983.

**16.** The statutory provisions governing establishment and operation of branches by state nonmember FDIC-insured banks provides:

(d)(1) No State nonmember insured bank (except a District bank) shall establish and operate any new domestic branch unless it shall have the prior written consent of the Corporation, .... The factors to be considered in granting or withholding the consent of the Corporation under this subsection shall be those enumerated in section 1816 of this title.

12 U.S.C. § 1828(d)(1) (1982). Section 1816 cites the following factors:

The financial history and condition of the bank, the adequacy of its capital structure, its future earnings prospects, the general character of its management, the convenience and needs of the community to be served by the bank, and whether or not its corporate powers are consistent with the purposes of this chapter.

12 U.S.C. § 1816 (1982).

were before the FDIC to contradict this evidence. The Village of Northbrook Board of Trustees, however, amended the zoning ordinance on February 22, 1983, to allow such a facility as a special zoning use. It was within the FDIC's discretion to rule, despite the then-existing denial of a zoning permit, that the facility would serve the community's banking convenience as asserted in Northbrook Trust's application. In any event, the facility now is permitted by the zoning ordinance.

■■■ The FDIC reviewed Northbrook Trust's application and ascertained that the six statutory factors were satisfied. *See* FDIC Memorandum to the File, January 31, 1983. The FDIC's review of the statutory requirements is a matter for its particular experience and expertise. Although the agency did not explain in specific findings the analysis it conducted to reach this conclusion, nothing in the record suggests that the FDIC lacked a firm basis upon which to exercise its discretion to approve this application. We affirm summary judgment for appellees in this case.

### IV. Abstention

■■■ Appellant finally argues that the district court erred by refusing to abstain from acting in the Comptroller and FDIC cases until the state court decided appellant's state law challenge to state agency approval. Appellant explains that it wanted to insure that if the state courts later voided state agency approval, appellant could pursue its challenge to FDIC approval in federal court.

Appellant appears to misinterpret both the law of abstention and the law of res judicata. First, the Comptroller is not bound by state agency or state court interpretations of state statutes, but may interpret incorporated state statutes as a matter of federal law. There would be no need to await the state court's guidance in the Comptroller's case. Second, appellant urges abstention in the FDIC case to avoid premature adjudication of federal constitutional issues by deferring to potential state court resolution on state law grounds. *See*

*Railroad Commission of Texas v. Pullman Co.,* 312 U.S. 496, 498, 61 S.Ct. 643, 644, 85 L.Ed. 971 (1941). Here, the only constitutional issue was whether the *federal* regulations violated procedural due process; this constitutional issue could not be disposed of by resolving state law issues. That a state court at some future time might dispose of the federal suit by invalidating prerequisite state agency approval does not call into play the abstention doctrine to avoid a constitutional ruling. A second prong of the abstention doctrine serves to avoid federal adjudication of difficult questions of state law and policy. *See Colorado River Water Conservation District v. United States,* 424 U.S. 800, 814, 96 S.Ct. 1236, 1244, 47 L.Ed.2d 483 (1976). Here, the FDIC defers to state agency interpretations of state law, and federal court review of FDIC actions need not delve into state law and policy questions. The FDIC case does not fit within either of these prongs of the abstention doctrine.

If in the future the state courts do void the state agency approval, Northbrook Trust simply could not operate the facility. In addition, a prerequisite to FDIC approval of Northbrook Trust's application would be nullified. As appellees point out, the FDIC then *sua sponte* could retract its approval; appellant could seek relief from final judgment in this action, *see* Fed.R. Civ.P. 60(b); or appellant could bring a new cause of action against the FDIC. Neither res judicata nor collateral estoppel would bar a new federal suit because of the intervening changed circumstances creating new legal conditions. *See Jackson v. De-Soto Parish School Board,* 585 F.2d 726, 729 (5th Cir.1978). Further, federal court construction of state law is not binding on state courts. *See, e.g., Kelsay v. Motorola, Inc.,* 74 Ill.2d 172, 182, 23 Ill.Dec. 559, 563, 384 N.E.2d 353, 357 (1978). We therefore see no reason why the state courts could not invalidate state agency approval on state law grounds even after the federal courts have upheld FDIC approval, or why FDIC approval could not then be rescinded.

The district court did not err by refusing to abstain in these cases.

### V. Conclusion

We affirm summary judgment for appellees.