609 So.2d 184 (1992)
Dr. Charles C. MARY
v.
The LUPIN FOUNDATION, et al.
No. 92-CC-0784.
Supreme Court of Louisiana.
November 30, 1992.
*185 George D. Fagan, Leake & Anderson, New Orleans, for applicant.
Neville M. Landry, Russell J. Schonekas, Berrigan, Danielson, Litchfield, Olsen, Schonekas & Mann, Dermot S. McGlinchey, James F. Hinton, Jr., James M. Garner, McGlinchey, Stafford, Cellini & Lang, Dominic J. Gianna, Paul J. Mirabile, Ira J. Middleberg, Alan Dean Weinberger, Middleberg, Riddle & Gianna, New Orleans, for respondents.
COLE, Justice.
This matter was consolidated for purposes of oral argument before this court with a suit bearing the same title, our docket number 92-CC-0578. We render a separate opinion this day in 92-CC-0578, 609 So.2d 192.

ISSUES
This is a derivative action brought by Dr. Charles C. Mary, a member and director of the Lupin Foundation (the "Foundation"). Dr. Mary brings the action individually and on behalf of the Foundation against three of its past and present directors, Arnold M. Lupin, E. Ralph Lupin, and Samuel Lupin (the "Inside-defendants"). The remaining members of the Foundation (the "Outside-defendants")[1] have been joined as defendants in this action pursuant to La.Code *186 Civ.Proc. art. 611 due to their alleged refusal to comply with Dr. Mary's request that they join as plaintiffs.
The issue presented in this case is whether plaintiff's cause of action may be premised upon a breach of fiduciary duties in violation of La.Rev.Stat. 12:226(A) (hereinafter § 226(A)) and, if so, what is the prescriptive period for that cause of action; or, whether the allegations of plaintiff's petition set forth only a cause of action for recovery of an unlawful distribution of corporate assets under Louisiana's Nonprofit Corporation Laws, La.Rev.Stat. 12:219(C) or :226(D) (hereinafter § 219(C) or § 226(D), respectively).

FACTS AND PROCEDURAL HISTORY
In 1974, a group of New Orleans area physicians, including Dr. Mary and the Inside-defendants, were united in their disenchantment with the quality, availability and affordability of health care in the New Orleans area. To ameliorate the problems they perceived, the doctors resolved to operate a general hospital in the heart of New Orleans. This vision became the St. Charles General Hospital ("St. Charles General" or "Hospital"), which the doctors managed through their positions as directors and officers of a newly-formed corporation, St. Charles General Hospital, Inc. (the "Corporation"). In keeping with the charitable motivations behind the project, the Corporation was organized as a nonprofit corporation whose earnings were dedicated to furthering charitable causes throughout Louisiana.
After operating the St. Charles General successfully for a number of years, the Corporation was presented with an offer for the purchase of the Hospital by Westbank Medical Services Limited ("Westbank") a wholly-owned subsidiary of National Medical Enterprises, Inc. ("NME"), a California corporation. Dr. Mary alleges the Inside-defendants, who constituted a majority of the Board of Directors of the Corporation, staunchly advocated the proposed sale to Westbank, while other members and directors of the Corporation questioned the proposed sale price. Dr. Mary further alleges the Inside-defendants successfully opposed any efforts to solicit additional offers from other prospective buyers.
The sale was ultimately approved and, on October 1, 1981, the Corporation conveyed all of its right, title, and interest in St. Charles General to Westbank for a purchase price of approximately $12.6 million.[2]
Dr. Mary alleges the Hospital was, at the time of this sale, worth approximately $17.6 million. By secret arrangement, he alleges, NME was allowed to purchase the Hospital for $5 million less than its true value and, in exchange for this right, NME was required to purchase three other corporations, each of which were principally owned by the Inside-defendants.[3] Dr. Mary contends these additional corporations were essentially worthless yet, despite their lack of value, NME was required to pay the highly inflated purchase price of approximately $5 million, an amount corresponding to the undervaluation in the sale of the Hospital.
Dr. Mary submits this self-dealing scheme involved negligent and intentional misrepresentations and omissions, failure to act in good faith and other unlawful conduct all of which constituted a breach of the Inside-defendants' fiduciary duties. Based on these allegations Dr. Mary, on October 2, 1990, filed suit against the Inside-defendants seeking a judgment against them and in favor of the Corporation (presently operating under the name the Lupin Foundation).
*187 In the trial court, the defendants characterized Dr. Mary's petition as setting forth a claim for recovery of an "unlawful distribution" of corporate assets under La.Rev. Stat. 12:219(C) & 12:226(D). Defendants viewed Dr. Mary's claim as being premised on the alleged "secret" scheme (which, if true, would be "unlawful"), and through which they received $5 million of the purchase price of the Hospital (a diversion or "distribution" of corporate assets). Because an action premised on an unlawful distribution of corporate assets is subject to a two-year time limitation, the defendants filed an exception of peremption in response to Dr. Mary's suit.[4]
Dr. Mary countered, asserting the suit was one for breach of fiduciary duty under La.Rev.Stat. 12:226(A), which is governed by the 10-year prescriptive period for personal actions. La.Civ.Code art. 3544; Levy v. Billeaud, 443 So.2d 539 (La.1983).[5]
The trial court reasoned there had been and could be no "unlawful distribution of corporate assets" under these allegations inasmuch as the Corporation never received the $5 million and hence could not possibly have distributed it. Because there was no unlawful distribution of corporate assets, Dr. Mary's claim did not arise under the provisions for recovery of same, §§ 219(C), 226(D). Therefore, the trial court overruled the defendants peremptory exception.
The defendants sought writs of review from the fourth circuit court of appeal. A five member panel of the court of appeal granted the defendants' writ application and reversed the trial court decision with one judge concurring and one judge dissenting. The court of appeal held that an "unlawful distribution of corporate assets," as used in the relevant statutes, does not require formal corporate action. Thus, the fact that the Board of Directors of the Corporation never made a formal decision to give the $5 million to the Inside-defendants did not prevent it from falling within the ambit of those provisions. Moreover, the court of appeal held the right of the Corporation to receive full value in return for the sale of one of its assets was, itself, a corporate asset which could be distributed. Thus, the fact that the Corporation never received the $5 million did not preclude there being an unlawful distribution of corporate assets. Accordingly, the court of appeal concluded Dr. Mary's claim fell squarely within the terms of § 219(C) and § 226(D) and, hence, was time-barred.
We granted Dr. Mary's application for supervisory writs,[6] and now reverse the decision of the court of appeal.

THE LAW
La.Rev.Stat. 12:226(A) imposes on officers and directors of nonprofit corporations fiduciary duties which run in favor of the corporation and its members. This statute also defines the standard of care the officers and directors must employ in fulfilling their corporate obligations:
A. Officers and directors shall be deemed to stand in a fiduciary relation to the corporation and its members, and shall discharge the duties of their respective positions in good faith, and with that diligence, care, judgment and skill which ordinarily prudent men would exercise under similar circumstances in like positions.
Although this provision has not yet been interpreted by any Louisiana court, cases decided under the provisions of Louisiana's Business Corporation Laws, La. Rev.Stat. 12:1 et seq., may properly be referred to for guidance in our interpretation. See Official Comment to § 226 ("Provisions relating to nonprofit corporations have been conformed generally to those relating to business corporations.").
*188 Applying the Business Corporation Laws, this court has consistently held that because a corporate liquidator stands in a fiduciary relationship with the corporation and its shareholders, (La.Rev.Stat. 12:145(G)), he must "discharge [his] duties in good faith, and with that diligence, care, judgment and skill which ordinarily prudent men would exercise under similar circumstances in like positions"the fiduciary standard applicable to officers and directors of business corporations (La.Rev. Stat. 12:91). Levy v. Billeaud, 443 So.2d 539, 543 (La.1983). Failure of the liquidator to comply with these standards gives rise to a cause of action by or on behalf of the corporation. See, e.g., Levy, Id.; Noe v. Roussel, 310 So.2d 806, 817 (La.1975).
Moreover, several of our lower courts have recognized a cause of action arising under La.Rev.Stat. 12:91 for failure of the directors of a business corporation to comply with their fiduciary duties. See, e.g., Robinson v. Snell's Limbs and Braces, 538 So.2d 1045 (La.App. 4th Cir.1989); Dunbar v. Williams, 554 So.2d 56 (La.App. 4th Cir.1988).
This jurisprudence developed under La. Rev.Stat. 12:91, a provision virtually identical in terms to La.Rev.Stat. 12:226(A), provides a persuasive indication that a cause of action may be premised on a director's breach of the standard of conduct set forth in § 226(A).
We further observe that allowing a cause of action for such breaches comports with the general intent of § 226. Paragraph (A) of § 226 prohibits all types of fiduciary breaches by officers and directors, establishing a general standard of care which must be adhered to by those parties. By contrast, paragraph (D) of § 226 creates a modified standard of care which applies only to directors and then only when a director votes in favor of an unlawful distribution, a particular type of fiduciary breach. But for the existence of a cause of action under § 226(A), a breach of fiduciary duties by a director which did not involve unlawful distributions of corporate assets as well as all breaches of fiduciary duties by an officer would be without an operative avenue for redress.
Based on these considerations, we conclude a cause of action may be premised on a violation of the standard of conduct set forth in La.Rev.Stat. 12:226(A).[7]
We next consider the prescriptive period applicable to an action for breach of fiduciary duty under § 226(A). In Levy, 443 So.2d at 545, we held,
An action by a shareholder against a corporate official for breach of a fiduciary duty is a personal action prescribed by ten years from the acts complained of. C.C. art. 3544; Dawkins v. Mitchell, 149 La. 1038, 90 So. 396, 399 (1922); Percy v. White, 7 Rob. 513 (La.1844); Edwins v. Lilly, 422 So.2d 1217, 1223 (La.App. 4th Cir.1982).
The rationale behind finding the ten year prescriptive period applicable in Levy arose from the fiduciary relationship between the liquidator therein and the shareholders of the corporation being liquidated. Because of this fiduciary relationship, the duty owed those shareholders was special as opposed to a general duty due everyone. Thus, although Levy involved an action by a shareholder, the same ten year prescriptive period would also be applicable to an action brought by or on behalf of a corporation, as the fiduciary relationship between the directors of a corporation and the corporation itself gives rise to this same special duty.
By analogizing these results under the Business Corporation Laws to the Nonprofit Corporation Laws, we conclude that an action under La.Rev.Stat. 12:226(A) is subject to a ten year liberative prescriptive period.
We next address the elements of a cause of action under § 226(D). This determination is significant because a cause of *189 action under that section against the directors of a corporation arising from an unlawful distribution of corporate assets is time barred after two years. Any other breach of fiduciary duties by the directors, however, gives rise to a cause of action under § 226(A) which is subject to a ten-year prescriptive period.
Section 226(D) provides in part:
D. If any unlawful distribution, payment or return of assets be made to the members, ... the directors who knowingly, or without the exercise of reasonable care and inquiry, voted in favor thereof shall be liable jointly and severally to the corporation, or to creditors of the corporation, or to both, in an amount equal to the amount of the unlawful distribution.
To impose liability under this section there must be: (1) an "unlawful distribution, payment or return;" (2) of "assets;" (3) to the "members;" (4) resulting from a "vote" in favor thereof by the directors; (5) which vote was done "without the exercise of reasonable care and inquiry."
"Assets" is defined in La.R.S. 12:201(4) to mean "all of a corporation's property and rights of every kind." This definition is broad enough to include the right to receive full value in return for the sale of an asset, even though that value has not yet been physically received by the corporation.
The requirement of a vote of the directors mandates deliberate, formal corporate action as a prerequisite to director liability under this subsection. Indeed, only those directors who vote in favor of the unlawful distribution may be liable under § 226(D).
That formal corporate action is required for a cause of action to fall within the ambit of § 226(D) also conforms with the relatively short (two-year) time limitation provided in that subsection. If a quorum of the board of directors were to meet and adopt a resolution either making an unlawful distribution or granting the directors or their agents the discretion to make an unlawful distribution, then any remaining members of the board of directors as well as members of the corporation would be put on sufficient notice of the action such that the two-year time limitation would not be unfair. By contrast, when some of the directors surreptitiously devise a scheme to deprive the corporation of its assets, the innocent directors and/or members may be unable to discover the appropriation within two years of its consummation. In such instances the ten-year period for attacking general breaches of fiduciary duties, § 226(A), is more appropriate.
Moreover, this interpretation of § 226(D) is further supported by the language of the first element"distribution, payment or return." Each of these terms connotes deliberate action by or on behalf of one entity directed toward or for the benefit of another entity; that is, these terms contemplate corporate "distribution, payment or return" to a member rather than a member's appropriation or confiscation for his own benefit.
Finally, it should be pointed out, director liability under § 226(D) is joint and several for the full amount of the distribution. "Joint and several" liability in Louisiana is the equivalent of "in solido" liability. Thus each director who violates § 226(D) may be held individually liable for the full amount of the unlawful distribution.
In contrast to § 226, § 219 addresses the liability of members[8] of a corporation. Paragraph (C) of § 219 provides:
C. Every member who receives any unlawful distribution of assets shall be liable to the corporation or to creditors of the corporation, or to both, in an amount not exceeding the amount so received by him. An action to enforce this liability must be brought within two years from the date on which the unlawful distribution was received, and this time limit shall not be subject to suspension on any ground, nor to interruption except by timely suit.
*190 From the terms of this subsection standing alone, it could be argued that formal corporate action is not necessary for a claim to fall within the ambit of this subsection, as it is under § 226(D). Indeed, § 219(C) refers to member liability for receipt of "any unlawful distribution of assets." By reading § 219 in its entirety, however, we find this argument to be untenable.
Subsection (E) of § 219 exempts from liability for the commission of a prohibited act any member who was "absent from the meeting of members at which the action was authorized, or [who] was present or represented at such meeting" but dissented from the action.[9] This reference in § 219(E) to member liability being predicated upon the member being present or represented at "the meeting ... at which the action was authorized" makes it clear: member liability under § 219(C) for receipt of an unlawful distribution is, like § 226(D), subject to the requirement that formal corporate action be involved.
Subsection 219(D) creates one notable exception to the rule that formal member action is required as a prerequisite to member liability for receipt of an unlawful distribution. This subsection grants corporate directors a cause of action for indemnity against member-recipients of unlawful distributions when the director has been held liable for negligently consenting to or participating in the unlawful distribution, i.e., when the director has been held liable under § 226(D).[10] In that case, despite the absence of formal corporate action by the members, the members may still be held liable for the amount of an unlawful distribution which they received.
Unlike § 226(A), § 219 does not further impose general fiduciary duties upon corporate members and subject them to liability for breach of those duties. Thus, under the Nonprofit Corporation Laws, members may only be held directly liable for receipt of unlawful distributions when the distributions resulted from formal corporate action by the members.
Our interpretation of § 219 comports with the same policy considerations which reinforced our interpretation of § 226. The relatively short, two-year time period within which an action to recover an unlawful distribution must be brought should only be applicable to those situations in which formal action by some corporate members puts the corporation, the directors and the other corporate members on notice of the wrongful conduct. As with our interpretation of § 226(D), this conclusion also ascribes the most commonly understood meaning of the word "distribution" to its use in § 219(C). As noted earlier, "distribution" connotes action by or on behalf of one entity to or for the benefit of another entity. In § 219(C), "distribution" refers to action by the corporation (through the collective action of its members) to the members.
Finally, unlike § 226(D), § 219(C) limits member liability to the amount of an unlawful distribution actually received by that member. Thus, the causes of action created by the two statutes are distinct, providing different types of relief to an aggrieved plaintiff. Because of this distinction, a cause of action asserted under one of the statutes cannot be "re-characterized" as asserting a cause of action under *191 the other statute by a director-defendant who also happens to be a member-recipient of an unlawful distribution.

APPLICATION OF THE LAW TO THE FACTS
Dr. Mary's petition alleges the Inside-defendants, in conjunction with the corporation's sale of its principal asset, "secretly structured" a side deal with NME, the prospective purchaser of that asset. According to Dr. Mary's allegations, the Inside-defendants sold NME the right to acquire the St. Charles General for $5 million less than its actual value and, in exchange for this right, NME was required to purchase three worthless corporations, each of which were principally owned and controlled by the Inside-defendants. Dr. Mary alleges this arrangement, which diverted $5 million of the sale value of the St. Charles General from the Corporation to the Inside-defendants, was the culmination of a self-dealing scheme formulated by the Inside-defendants. Dr. Mary contends the Inside-defendants, in executing this scheme, made negligent and intentional misrepresentations, failed to act in good faith, and engaged in "other unlawful conduct."
There are no allegations in this case (neither in Dr. Mary's petition nor in the defendants' Memorandum in Support of Peremptory Exception of Peremption) that this "side-deal" was presented to the Corporation's Board of Directors, voted on, and approved. One of the requisite elements of a cause of action under La.Rev.Stat. 12:226(D) for recovery of an unlawful distribution is a vote by the directors of the corporation, approving the distribution. Because there are no such allegations in this case, plaintiff's cause of action does not fall within the ambit of § 226(D) with its two-year time limitation.
Likewise, direct member liability under § 219(C) may only be predicated upon an unlawful distribution which resulted from formal member authorization. In this case, there are no allegations that the members of the Corporation formally met and approved the arrangement to divert $5 million of the sale price of the Hospital to the Inside-defendants. Thus, Dr. Mary's claim does not fall within the ambit of § 219(C) and, hence, is not subject to that subsection's two-year time limitation.
Outside-defendants attempt to avoid this result by pointing out that the undervalued sale of the Hospital did have the approval of the Board of Directors. This argument fails to consider the other elements of a cause of action under § 226(D). The mere undervalued sale of the Hospital did not distribute any assets "to the members" of the Corporation; rather the Inside-directors' unapproved arrangement involving the three other corporations resulted in the distribution to the members. Thus, director approval of the underpriced sale, standing alone, does not bring Dr. Mary's claim within the ambit of § 226(D).
Director approval of an undervalued sale of corporate assets may, however, create liability under § 226(A), provided the standard of care required by that subsection was not complied with. Similarly, engaging in a self-dealing scheme which lacks some of the requisite elements of a § 226(D) action may nevertheless subject the directors to liability under § 226(A). In the present case, Dr. Mary alleges the Inside-directors devised a self-dealing scheme designed to pilfer corporate assets and, in executing this scheme, the Inside-directors conducted their corporate functions in breach of their obligations of good faith to the corporation and in breach of their fiduciary duties. These allegations are sufficient to establish a cause of action under La.Rev.Stat. 12:226(A).

CONCLUSION
Based on the foregoing, we conclude Dr. Mary's petition alleges a cause of action for breach of fiduciary duties under La. Rev.Stat. 12:226(A). The court of appeal was thus in error when it applied the two-year time limitation of § 226(D) or § 219(C) to this claim. Accordingly, the decision of the court of appeal is reversed and this *192 case is remanded for further proceedings consistent with this opinion.
REVERSED, AND REMANDED.
WATSON, J., dissents.
NOTES
[1] The Outside-defendants are Louis Levy II, Louis Lupin, Jay Lupin, and Susanne Lupin Stokar.
[2] Following the sale of the Hospital to Westbank, the name of the Corporation was changed to Physicians New Orleans Foundation. Subsequently this name was changed again, this time to its present name, the Lupin Foundation. The business of the corporation after the sale became restricted to investing its assets and donating its income to charitable, educational and scientific organizations around Louisiana.
[3] These corporations were Unihealth Services Corporation ("Unihealth"), a Delaware business corporation, Home Health Services of Louisiana, Inc. ("HHS"), a Louisiana nonprofit corporation, and Datamedics, Inc. ("Datamedics"), a Louisiana business corporation.
[4] Both lower courts agreed that the two year period provided by these statutes is peremptive rather than prescriptive. We do not pass on the correctness of that holding as it is not relevant to our disposition of this matter.
[5] Dr. Mary did not attempt to bring this action within the purview of La.Rev.Stat. 12:247(F) which creates a cause of action to set aside certain conveyances of all or substantially all the assets of a corporation under certain circumstances.
[6] 599 So.2d 304 (La.1992).
[7] We further note with approval one United States Fifth Circuit case applying Louisiana law which concluded La.Rev.Stat. 12:226(A), the very provision at issue herein, provides a cause of action against the directors of a nonprofit corporation for breach of their fiduciary duties. Louisiana World Exposition v. Federal Ins. Co., 858 F.2d 233 (5th Cir.1988).
[8] "Member" is defined in La.Rev.Stat. 12:201(16) as "each natural or artificial person admitted to membership in a corporation, and, unless the context indicates otherwise, includes shareholders."
[9] La.Rev.Stat. 12:219(E) provides:

E. A member shall not be liable for the commission of a prohibited act if he was absent from the meeting of members at which the action was authorized, or if he was present or represented at such meeting, and his dissent therefrom was either noted in the minutes of the meeting or filed promptly thereafter in the registered office of the corporation.
[10] La.Rev.Stat. 12:219(D) provides:

D. When the directors are held liable solely because of having negligently consented to or participated in any unlawful distribution, payment or return of assets, the directors shall have, to the extent of the payments made by them, a cause and right of action for indemnity against each of the members for the proportionate amount of the unlawful distribution received by such member. This action must be brought within two years from the date of payment by the directors on account of the liability imposed by R.S. 12:226(D), and this time limit shall not be subject to suspension on any ground, nor to interruption except by timely suit.