United States Court of Appeals,

Fifth Circuit.

No. 93-3183.

RESOLUTION TRUST CORPORATION, Plaintiff-Appellant,

v.

Louis A. MIRAMON, Jr., et al., Defendants-Appellees.

June 21, 1994.

Appeal from the United States District Court for the Eastern District of Louisiana.

Before JOHNSON, GARWOOD, and JOLLY, Circuit Judges.

JOHNSON, Circuit Judge:

The Resolution Trust Corporation (RTC) sued several officers and directors (collectively, "the defendants") of a failed savings and loan institution alleging 1) negligence, 2) breach of fiduciary duty and 3) gross negligence. Under Fed.R.Civ.P. 12(b)(6), the district court dismissed the negligence and breach of fiduciary duty claims holding that they failed to state a claim on which relief could be granted. The district court then certified this case pursuant to Fed.R.Civ.P. 54(b) and the RTC appeals. We AFFIRM.

*FACTS AND PROCEDURAL HISTORY*

For purposes of this appeal, only a brief recitation of the facts is needed. On August 7, 1989, the Federal Home Loan Bank Board closed South Savings and Loan Association ("South Savings"), a federally-insured, state-chartered institution located in Slidell, Louisiana. The Federal Savings and Loan Insurance Corporation (FSLIC) was initially appointed as receiver, but, after

the passage of the Financial Institutions Reform, Recovery and Enforcement Act (FIRREA)[1] on August 9, 1989, the RTC succeeded the FSLIC as receiver.

On August 9, 1992, the RTC filed the instant action against the defendants who were former directors or officers of South Savings. The RTC sought to recover losses suffered by South Savings allegedly caused by the defendants' negligence, breach of fiduciary duties and gross negligence.

The defendants moved to dismiss, under F.R.Civ.P. 12(b)(6), the causes of action for negligence and breach of fiduciary duty contending that these theories failed to state claims on which relief could be granted. In making these motions, the defendants argued that section 1821(k) of FIRREA established gross negligence as a national standard of liability for directors and officers of federally-insured depository institutions. The RTC, by contrast, argued that federal common law survived the passage of FIRREA and allows actions against directors and officers of depository institutions based on simple negligence.

The district court found that section 1821(k) did set a federal standard of care of gross negligence and that any federal common law to the contrary was preempted. As the RTC's negligence and breach of fiduciary duty claims alleged lesser standards of liability than gross negligence, the district court granted the defendants' motions and dismissed those claims. The district court then certified this case for interlocutory review pursuant to

---

[1]Pub.L. No. 101-73, 103 Stat. 183 (1989).

Fed.R.Civ.P. 54(b).

Accordingly, the RTC now appeals the district court's dismissal of its causes of action against the defendants based on simple negligence and breach of fiduciary duty contending that despite section 1821(k), these causes of action remain viable under the federal common law.  The defendants responded and were joined by the American Bankers Association and Independent Bankers Association of America who filed an amicus curiae brief which voiced that group's position that section 1821(k) created a federal standard of gross negligence.  Lastly, in a supplemental round of briefing, the RTC advances for the first time that even if it has no causes of action for simple negligence or breach of fiduciary duty under federal common law, those causes of action are available under Louisiana state law.

*DISCUSSION*

The issues in this case involve questions of statutory construction which we review under a de novo standard of review. *Cruz v. Carpenter,* 893 F.2d 84, 86 (5th Cir.1990).

1. *Federal Common Law*

The issue herein is whether the RTC can sue directors or officers of federally-insured depository institutions for simple negligence and breach of fiduciary duty under the federal common law.  The district court held that the RTC could not because the court found that federal common law had been preempted by the plain language of section 1821(k) which the court held established gross negligence as the federal standard of care.  This section states,

3

in pertinent part, that

> [a] director or officer of an insured depository institution may be held personally liable for monetary damages in any civil action by, on behalf of, or at the request or direction of the Corporation ... for gross negligence, including any similar conduct or conduct that demonstrates a greater disregard of a duty of care (than gross negligence) including intentional tortious conduct, as such terms are defined and determined under applicable State law. Nothing in this paragraph shall impair or affect any right of the Corporation under other applicable law.

12 U.S.C. § 1821(k).

This issue of whether section 1821(k) preempts federal common law has been addressed by only one other federal appellate court.[2] That court, in *RTC v. Gallagher,* 10 F.3d 416 (7th Cir.1993), concluded that section 1821(k) preempted federal common law and that the sole cause of action against directors and officers under federal law was for gross negligence. This has also been the conclusion of the majority of district courts that have addressed this issue.[3] For the reasons stated below, we agree with these

---

[2]Two circuit courts have addressed the similar issue of whether *state* common law is preempted by § 1821(k) and have held that state common law standards which allow causes of action against directors and officers of federally-insured institutions based on simple negligence are not preempted. *FDIC v. Canfield,* 967 F.2d 443, 448 (10th Cir.) (en banc), *cert. denied,* --- U.S. ----, 113 S.Ct. 516, 121 L.Ed.2d 527 (1992); *FDIC v. McSweeney,* 976 F.2d 532, 538 (9th Cir.1992), *cert. denied,* --- U.S. ----, 113 S.Ct. 2440, 124 L.Ed.2d 658 (1993). These courts concluded that state law is preempted only to the extent that states attempt to insulate directors and officers by establishing a more forgiving standard of care than gross negligence. *Canfield,* 967 F.2d at 447; *McSweeney,* 976 F.2d at 539. We do not decide this question today.

[3]*See FDIC v. Harrington,* 844 F.Supp. 300, 304 (N.D.Tex.1994); *FDIC v. Gonzalez-Gorrondona,* 833 F.Supp. 1545, 1552 (S.D.Fla.1993); *RTC v. Farmer,* 823 F.Supp. 302, 307 (E.D.Pa.1993); *FDIC v. Mintz,* 816 F.Supp 1541, 1545 (S.D.Fla.1993); *FDIC v. Bates,* 838 F.Supp. 1216, 1220

courts and hold that section 1821(k) preempts federal common law.

It is important to note at the outset the very limited role of federal common law. Federal courts are not common law courts possessing a general power to develop and refine their own rules of decision. *Wayne v. Tennessee Valley Authority,* 730 F.2d 392, 398 (5th Cir.1984), *cert. denied,* 469 U.S. 1159, 105 S.Ct. 908, 83 L.Ed.2d 922 (1985); *Erie R.R. v. Tompkins,* 304 U.S. 64, 78, 58 S.Ct. 817, 822, 82 L.Ed. 1188 (1938). Rather, the direction of national policy by the enactment of a federal rule is "generally, and purposely, reserved to the legislative branch of the government." *Wayne,* 730 F.2d at 398. Federal common law is merely a necessary expedient "resorted to "in the absence of an applicable Act of Congress' " when federal courts are forced to consider issues which cannot be answered from federal statutes alone. *Milwaukee v. Illinois,* 451 U.S. 304, 314, 101 S.Ct. 1784, 1791, 68 L.Ed.2d 114 (1981) (quoting *Clearfield Trust Co. v. United States,* 318 U.S. 363, 367, 63 S.Ct. 573, 575, 87 L.Ed. 838 (1943)). When Congress does speak to an issue previously governed by federal common law, the need to resort to this unusual lawmaking by the federal courts disappears. *Milwaukee,* 451 U.S. at 313-15, 101

---

(N.D.Oh.1993); *RTC v. Chapman,* No. 92-3188, slip op. (C.D.Ill. Oct. 16, 1992); *RTC v. Hecht,* 818 F.Supp. 894, 901 (D.Md.1992); *FDIC v. Brown,* 812 F.Supp. 722, 726 (S.D.Tex.1992); *RTC v. Gallagher,* 800 F.Supp. 595, 602 (N.D.Ill.1992); *FDIC v. Barham;* 794 F.Supp. 187 (W.D.La.1991); *FDIC v. Miller;* 781 F.Supp. 1271, 1275 (N.D.Ill.1991); *FDIC v. Mijalis,* No. 89-1316, 1991 WL 501602 (W.D.La. October 31, 1991). *Contra RTC v. Hess,* 820 F.Supp. 1359, 1364 (D.Utah 1993); *RTC v. Kidd,* No. 93-CV-0059-J, slip op. (D.Wyo. April 16, 1993); *RTC v. Gibson,* 829 F.Supp. 1110, 1118 (W.D.Mo.1993); *FDIC v. Nihiser,* 799 F.Supp. 904, 907 (C.D.Ill.1992).

S.Ct. at 1791.

In assessing whether congressional legislation has preempted a federal common law rule, "we start with the assumption that it is for Congress, not federal courts, to articulate the appropriate standards to be applied as a matter of federal law." *Id.* at 317, 101 S.Ct. at 1792. Even so, when Congress legislates in an area governed by common law, it is not writing on a clean slate. Rather, there is a longstanding principle that statutes which invade the common law are to be read with a presumption favoring the retention of well-established principles, except when a statutory purpose to the contrary is present. *United States v. Texas,* --- U.S. ----, ----, 113 S.Ct. 1631, 1634 (1993). This principle applies to federal common law as well as state common law. *Id.*

In light of this principle, we note that it is not necessary for Congress, in order to abrogate a federal common law provision, to affirmatively proscribe the common law rule. *Milwaukee,* 451 U.S. at 313-15, 101 S.Ct. at 1791. However, Congress must "speak directly" to the question addressed by the common law. *Id.* After considering the plain language of section 1821(k), we find that Congress did "speak directly" to the issue of the federal standard of care for directors and officers of federally-insured depository institutions thus preempting any resort to federal common law.[4]

---

[4]We do not find this conclusion to be at odds with *McSweeney,* 976 F.2d at 538. The issue before the *McSweeney* Court was whether a state common law standard of simple negligence was preempted and thus any language in that opinion to the effect that federal common law was not preempted by § 1821(k) is merely

The starting point for any question of statutory interpretation is the statute itself. Absent a clearly expressed legislative intent to the contrary, " "that language must ordinarily be regarded as conclusive.' " *Kaiser Aluminum & Chem. Corp. v. Bonjorno,* 494 U.S. 827, 110 S.Ct. 1570, 1575, 108 L.Ed.2d 842 (1990) (quoting *Consumer Product Safety Comm'n v. GTE Sylvania, Inc.,* 447 U.S. 102, 108, 100 S.Ct. 2051, 2056, 64 L.Ed.2d 766 (1980)). In this case, the statute clearly provides that "[a] director or officer ... may be held personally liable for monetary damages in any civil action ... for gross negligence ... as such terms are defined and determined under applicable State law." 12 U.S.C. § 1821(k). It is difficult to conceive how Congress could more clearly "speak directly" to the issue of the standard of care for personal liability of directors and officers of federally-insured depository institutions. As Congress has spoken to this area, the need to resort to federal common law no longer exists. Thus, whatever the content of federal common law may have been, it "must yield to Congress' clear statement that a gross negligence standard of liability applies." *Gallagher,* 10 F.3d at 420.

In urging us to reach a different conclusion, the RTC contends that the gross negligence standard set out in section 1821(k) is not exclusive. Section 1821(k), the RTC points out, provides that a director or officer "may" be held liable under a gross negligence standard. If that section were meant to be exclusive, the RTC

dicta.

7

argues, it would have said "may only." The RTC finds further support for its argument in the general savings clause of section 1821(k) which specifically preserves any right the RTC may have under any other applicable law. This other applicable law, the RTC contends, includes federal common law which the RTC maintains allows suits for simple negligence.

The RTC's argument is without merit. First, the word "may" as used in the first sentence of section 1821(k) empowers the RTC to bring a cause of action under the gross negligence standard set out in the rest of the sentence. The RTC, however, would have us read that word, not as an empowerment, but rather as a qualification which undermines the very cause of action the section creates. We agree with the *Gallagher* court, though, that this term was not meant to qualify the substantive part of the section providing for a gross negligence standard.[5]

Next, we reject the RTC's reading of the savings clause. That clause states that "[n]othing in this paragraph shall impair or affect[6] any right of the Corporation under other applicable law."

---

[5] "Read in context, the word "may' refers to the right of the [RTC] to bring an action under this section. "May' cannot reasonably be read to qualify the gross negligence liability standard and is therefore irrelevant to the substance of the provision." *Gallagher,* 10 F.2d at 420 (quoting *Canfield,* 967 F.2d at 450 n. 4 (*Borby,* J., dissenting)).

[6] The savings clause provides that the RTC's rights under *other* applicable law will not be impaired or affected. This clearly implies that the RTC's rights under *some* law is being impaired or affected. *FDIC v. Swager,* 773 F.Supp. 1244, 1248 (D.Minn.1991). Under the RTC's construction of the savings clause, though, there is no law that is impaired or affected because all previous common law remains effective and § 1821(k) merely grants the RTC an additional option. Had Congress

8

12 U.S.C. § 1821(k). If we were to construe that clause, as the RTC suggests, to preserve federal common law actions for simple negligence, then the explicit language of the first sentence of section 1821(k) which enunciates a cause of action for gross negligence would be rendered a nullity. Why would the RTC ever bring an action under section 1821(k), where it would have to prove gross negligence, when it could bring an action under the federal common law and only be required to prove simple negligence?

Reading the savings clause to nullify the substantive portion of the section would violate "the elementary canon of construction that a statute should be interpreted so as not to render one part inoperative." *Mountain States Tel. & Tel. Co. v. Pueblo of Santa Ana,* 472 U.S. 237, 249, 105 S.Ct. 2587, 2594, 86 L.Ed.2d 168 (1985) (quoting *Colautti v. Franklin,* 439 U.S. 379, 392, 99 S.Ct. 675, 684, 58 L.Ed.2d 596 (1979)); *In re Dyke,* 943 F.2d 1435, 1443 (5th Cir.1991). Moreover, were we to accept the RTC's arguments, the general savings clause would drown out the more specific substantive provision.[7] This would be contrary to another

---

intended this result it would have drafted the clause to read that "[n]othing in this paragraph shall impair or affect any right of the Corporation under *any* applicable law." *Id.* Accordingly, for this reason also, we find the RTC's construction of the savings clause to be contrary to the plain meaning of the statute.

[7]*But see Chemetron Corp. v. Business Funds,* 682 F.2d 1149 (5th Cir.1982), wherein this Court quoted with approval the following language:

> The settled rule of statutory construction is that, where there is a special statutory provision affording a remedy for particular specific cases and where there is also a general provision which is comprehensive

9

important canon of construction which teaches that the more specific controls over the general. *Foreman v. Prudential Insurance Co.,* 657 F.2d 717, 723 (5th Cir.1981). Finally, it simply makes no sense that Congress would establish a cause of action in one sentence and then render it a nullity in the next. Accordingly we find that section 1821(k)'s retention of the RTC's rights under "other applicable law" does not preserve a right to bring a federal common law action for simple negligence in the face of the gross negligence language of the substantive part of the section.

In addition, we find the RTC's arguments based on the statute's legislative history to be insufficient to change this conclusion. In making the argument that Congress intended a federal common law action for simple negligence to remain viable after the passage of section 1821(k), the RTC relies most heavily on the Senate Report which provides that

> [Section 1821(k) ] enables the FDIC to pursue claims against directors or officers of insured financial institutions for gross negligence (or negligent conduct that demonstrates a greater disregard of a duty of care than gross negligence) or for intentional tortious conduct.... This subsection does not prevent the FDIC from pursuing claims under State law or under other applicable Federal law, if such law permits the officers or directors of a financial institution to be sued 1) for violating a lower standard of care, such as simple negligence, or 2) on an alternative theory such as breach of contract or

---

> enough to include what is embraced in the former, the special provision will prevail over the general provision, and the latter will be held to apply only to such cases as are not within the former.

*Id.* at 1168, n. 51 (quoting *Montague v. Electronic Corp. of America,* 76 F.Supp. 933, 936 (S.D.N.Y.1948) (citations omitted)).

10

breach of fiduciary duty.

S.Rep. No. 19, 101st Cong., 1st Sess., 135th Con.Rec. S6912 (daily ed. June 19, 1989).  This report, however, was not available when the Senate initially voted on this bill.  Rather, it was published two months after the Senate initially voted.  *Id.* at S6934. Accordingly, this report is not entitled to substantial weight. *Gallagher,* 10 F.3d at 421;  *Clarke v. Securities Industry Ass'n,* 479 U.S. 388, 407, 107 S.Ct. 750, 761, 93 L.Ed.2d 757 (1987) (refusing to give substantial weight to a statement made by the sponsor of a law placed into the Congressional Record ten days after the law was passed).

Moreover, examination of all of the legislative history, and scrutiny of the sequence of events leading up to the bill's passage, calls into question the conclusion of that report.  This law initiated in the Senate and, as originally drafted, it explicitly provided for the exact same standard of liability which the RTC now implores us to judicially adopt.  Specifically, it would have allowed the RTC to bring a claim "for any cause of action available at common law, including, but not limited to, negligence, gross negligence, willful misconduct, breach of fiduciary duty...."  S. 774, § 214(n), 101st Cong., 1st Sess. at 105-06 (calendar N. 45, April 13, 1989).  In the Senate debate, however, several senators expressed concern over this provision fearing that it would deter qualified individuals from serving as

11

directors and officers.[8]

Senator Riegle, one of the bill's floor manager's, agreed that this was a serious concern and thus he submitted an amendment which deleted any reference to simple negligence.  135 Cong.Rec. S4451-52.  This amendment, with only minor changes, would become section 1821(k).  Speaking in favor of the amendment, Senator Sanford stated that

> these changes are essential if we are to attract qualified officers and directors to serve in our financial institutions.... The amendment would permit the FDIC to bring an action or direct others to bring an action against the directors and officers of a financial institution if the director or officer acted with gross negligence or committed an intentional tort.

*Id.* at S4276-77.  This comment reflects the deletion of a simple negligence standard from section 1821(k).

Moreover, the House version of FIRREA, which was passed after the Senate version and which was the version that emerged from the conference committee and was voted into law, preserved the Senate's removal of the simple negligence standard.  *See* Pub.L. No. 101-73, 103 Stat. 183 (Aug. 9, 1989), *reprinted in* 1989 U.S.C.C.A.N. 86.  Further, the House-Senate Conference report confirms that the standard of liability under section 1821(k) is gross negligence:

> Title II preempts State law with respect to claims brought by the FDIC in any capacity against officers or directors of an insured depository institution.  The preemption allows the FDIC to pursue claims for gross negligence or any conduct that demonstrates a greater disregard of a duty of care, including

---

[8]In particular, Senator Heflin argued for an amendment "to ensure that financial institutions are able to attract strong and capable individuals as directors and officers."  135 Cong.Rec. S4264 (daily ed. April 19, 1989).  Senator Conrad also supported Senator Heflin's request for an amendment.  *Id.*

intentional tortious conduct.[9]

H.R.Conf.Rep. No. 222, 101st Cong. 1st Sess. 393, 398 (1989), *reprinted in* 1989 U.S.C.C.A.N. 432, 437. This conference report is entitled to great deference inasmuch as it represents the final statement of terms agreed upon by both houses of Congress. *Davis v. Lukhard,* 788 F.2d 973, 981 (4th Cir.), *cert. denied,* 479 U.S. 868, 107 S.Ct. 231, 93 L.Ed.2d 157 (1986).

In sum, it appears that the sponsors of the bill feared that they could not get the votes needed for passage if they attempted to retain the standard of liability from the original draft of the bill which would have explicitly allowed the RTC to bring simple negligence actions under the federal common law. Therefore, the sponsors dropped that standard and put in its place a federal gross negligence standard of liability.

This conclusion that the simple negligence standard of liability was removed from the statute is also supported by postenactment legislative history. Although post-enactment legislative history cannot be given the same weight as contemporaneous legislative history, we would be remiss if we did

---

[9]A major concern of this section was the trend in the states of passing legislation that insulated directors and officers from liability unless they were reckless or committed willful breaches. Hence, one purpose was of this section was to ensure that the RTC could bring an action for gross negligence even in the face of contrary state law. Thus, as explained by Senator Riegle, this section preempts state law at least to the extent that the state law disallows an action against a director or officer for gross negligence or for any conduct reflecting a higher disregard of a duty of care than gross negligence. 135 Cong.Rec. S4278-79 (daily ed. April 19, 1989). As the issue we face is whether federal common law is preempted, the issue of insulation by forgiving state legislation is not relevant.

13

not consider it.  *Cannon v. University of Chicago,* 441 U.S. 677, 687 n. 7, 99 S.Ct. 1946, 1952, n. 7, 60 L.Ed.2d 560 (1979).  In this case, we note that there have been two subsequent attempts to amend section 1821(k) to codify a simple negligence standard.[10] These two attempts to reinstate a simple negligence standard belie the RTC's position that the savings clause of section 1821(k), as enacted, preserves a right to sue for simple negligence under federal common law.

At best, the RTC has shown that the legislative history to FIRREA is muddled and sends conflicting signals.  However, this history simply does not demonstrate the kind of "clearly expressed legislative intention" needed to overcome the plain meaning of the statute.  *Kaiser Aluminum,* 494 U.S. at 833-34, 110 S.Ct. at 1575.

---

[10]In August 1991, the FDIC submitted to Congress a proposed amended savings clause which provided that:

> Nothing in this subsection shall impair or affect any right of the [FDIC] under other applicable State *or Federal law, including a right to hold such director or officer personally liable for negligence.*

Liebold, *Federal Common Law:  What & Where?, in Civil & Criminal Liability of Officers, Directors & Professionals: Bank & Thrift Litigation in the 1990's,* 153, 161 n. 12 (Practicing Law Institute 1991) (emphasis added).  Then, after this proposal was withdrawn, Congressman Baker, at the request of the FDIC, submitted another proposed amendment which would have provided that there would have been no impairment of any right of the RTC

> under any provision of *applicable State law or other Federal law, including any provision of common law* or any law establishing the personal liability of any director or officer of an insured depository institution under any standard pursuant to such law.

H.R. 3435, 102nd Cong., 1st Sess. § 228 (Comm. Markup Oct. 18, 1991).

That "plain meaning" of the statute provides for gross negligence as the federal standard of liability. As this statute "speaks directly" to the issue of the standard of liability for directors and officers of federally-insured depository institutions, we hold that federal common law in this area is preempted. *Milwaukee,* 451 U.S. at 313-16, 101 S.Ct. at 1791-92.

2. *Louisiana Law*

During the proceedings in the district court, and in its first two appellate briefs before this Court, the RTC proceeded with the understanding that the standard of liability for directors and officers of depository institutions under Louisiana law was gross negligence. This was a well-founded belief as this Court held exactly that in *Louisiana World Exposition v. Federal Ins. Co.,* 864 F.2d 1147, 1151 (5th Cir.1989).[11] *See also FSLIC v. Shelton,* 789 F.Supp. 1360, 1366-67 (M.D.La.1992) ("There is no

[11]In *Louisiana World Exposition,* this Court was called on to determine whether La.Rev.Stat.Ann. § 12:226(A) (West 1969) described a simple negligence or a gross negligence standard of liability. *Louisiana World Exposition,* 864 F.2d at 1149. This statute established the standard of care applicable to directors and officers of a nonprofit Louisiana corporation and it provides that

> [o]fficers and directors shall be deemed to stand in a fiduciary relation to the corporation and its members, and shall discharge the duties of their respective positions in good faith, and with that diligence, care, judgment and skill which ordinarily prudent men would exercise under similar circumstances in like positions.

§ 12:226(A). Reading this language in light of Louisiana case law and the commentary, this Court held that simple negligence was not enough under this statute for personal liability to be assessed, but rather a showing of gross negligence was necessary. *Louisiana World Exposition,* 864 F.2d at 1151.

claim under Louisiana law based on simple negligence against officers and directors"). Further, the Louisiana legislature, in 1992, codified that standard by the enactment of Act 586 which provides that:

> A director or officer of a financial institution shall not be held personally liable to the financial institution or the shareholders or members thereof for monetary damages unless the director or officer acted in a grossly negligent manner as defined in R.S. 6:703(9) or engaged in conduct that demonstrates a greater disregard of the duty of care than gross negligence, including intentional tortious conduct or intentional breach of the duty of loyalty.

La.Rev.Stat.Ann. 6:786(B) (West Supp.1994).

In its supplemental brief to this Court, however, the RTC switched gears and contended for the first time that the Louisiana law applicable at the time of the events in this case was simple negligence. For support, the RTC looked to *Mary v. The Lupin Foundation,* 609 So.2d 184 (La.1992), which the RTC claimed rejected the conclusion in *Louisiana World Exposition* and held that prior to the enactment of Act 586, the Louisiana standard of care was simple negligence. Further, the RTC contended that Act 586 could not be retroactively applied to defeat the RTC's rights which had vested prior to its passage.[12]

The RTC's contentions in its supplemental brief raise two troubling questions. The first is whether we can address this

---

[12]Although section 2 of Act 586 specifically provides that it is to be applied retroactively, the RTC argues that the this would be ignored by the Louisiana courts because its claims were vested before the enactment of Act 586. *See Gilboy v. American Tobacco Co.,* 582 So.2d 1263, 1265 (La.1991) (A statute that changes settled law relating to substantive rights only has prospective effect).

16

issue raised for the first time in the RTC's third round of appellate briefing. The second is whether we can give Act 586 retroactive effect. Fortunately, we do not need to address these issues because we find that the Louisiana standard of liability for directors and officers is, and was, gross negligence.

The RTC's reliance on *Mary* as contra authority to *Louisiana World Exposition* is misplaced. In *Mary,* the issue before the Louisiana Supreme Court was not the standard of liability for directors and officers, but rather it was the appropriate statute of limitations to be applied to the action brought by Dr. Mary. The action centered around the sale of the St. Charles General Hospital which was owned by the Lupin Foundation. Dr. Mary, a director of the Lupin Foundation, sued certain of his codirectors claiming that they had wrongfully and secretly received $5 million in a side deal with the purchaser of St. Charles. *Mary,* 609 So.2d at 186.

Dr. Mary did not bring this suit until nine years after the transaction, however. Thus, the defendants challenged the basis of the cause of action brought by Dr. Mary. If, as the defendants argued, the facts alleged stated a claim under La.Rev.Stat.Ann. §§ 12:219(C) & 12:226(D) for unlawful distribution of corporate assets, then a two-year statute of limitations applied. *Id.* at 187. Thus, Dr. Mary's claim would be time-barred. On the other hand, if, as Dr. Mary contended, the facts alleged stated a claim under La.Rev.Stat.Ann. § 12:226(A) for breach of fiduciary duty by an officer or director, then a ten-year statute of limitations

17

applied.  In that case, the claim would not be time-barred.  *Id.*

Resolving this issue, the Louisiana Supreme Court held that Dr. Mary's claims were not time-barred as the facts alleged stated a claim under La.Rev.Stat.Ann. 12:226(A) and that the ten-year statute of limitations applied.  *Id.* at 188.  In making this determination, though, the Louisiana Supreme Court only decided the *basis* of liability under the facts as alleged.  It did not decide the issue of the standard of care under which personal liability could be imposed against directors or officers under section 12:226(A) as that issue was not before the court.

Accordingly, we see no conflict between *Mary* and *Louisiana World Exposition.*  The Louisiana Supreme Court was not attempting to set any standard of liability and we find no explicit or implicit intention in *Mary* to reject the gross negligence standard announced by this Court in *Louisiana World Exposition,* 864 F.2d at 1151.  Therefore, we adhere to the conclusion of the *Louisiana World Exposition* Court and hold that even prior to the enactment of Act 586, the standard of care under Louisiana law for the imposition of personal liability against directors and officers was gross negligence.[13]

*CONCLUSION*

Section 1821(k) "speaks directly" to the issue of the standard of liability of a director or officer of a federally-insured

---

[13]As we conclude that the Louisiana standard of liability mirrors the federal standard set in § 1821(k), we have no occasion to determine whether § 1821(k) would preempt a more onerous state standard and we express no opinion in that regard. *See supra* note 2.

18

depository institution thus preempting federal common law.[14] Moreover, the federal standard of liability established by section 1821(k) is gross negligence as defined under applicable state law. Gross negligence is also the standard to be applied under Louisiana law. Consequently, as neither federal law nor Louisiana law recognizes a cause of action against directors or officers of depository institutions for lesser breaches of duty than gross negligence, the district court did not err in dismissing the RTC's claims for simple negligence and breach of fiduciary duty. AFFIRMED.

---

[14]In light of this conclusion, we have no occasion to consider whether absent § 1821(k) federal common law would govern the duties owed their corporation by directors or officers of state-chartered, federally-insured, financial institutions.

19